## STATE OF CONNECTICUT *v.* JOHN YURCH (12708)

LANDAU, HEIMAN and SPEAR, Js.

Argued October 31, 1994—decision released February 28, 1995

*Louis S. Avitabile,* with whom was *Meryl Anne Spat,* for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *John Connelly,* state's attorney, and *Robin A. Lipsky,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant, John Yurch, appeals from the judgment of conviction, rendered after a trial to the court, of two counts of forgery in the third degree in violation of General Statutes § 53a-140,[1] and from

---

[1] General Statutes § 53a-140 provides in pertinent part: "A person is guilty of forgery in the third degree when, with intent to defraud, deceive or injure

the judgment finding him in violation of probation pursuant to General Statutes § 53a-32.[2] The defendant claims that the trial court (1) improperly convicted him on the first count of forgery in the third degree in that (a) forgery in the third degree is not a lesser included offense of forgery in the second degree, (b) there was insufficient evidence that the alleged contract, if completed, was capable of transferring property, and (c) an intent to injure, not simply an intent to deceive, is required to prove a violation of the statute, (2) improperly convicted him on the second count of forgery in the third degree in that (a) an intent to injure, not merely to deceive, is required under the statute and (b) the state failed to prove an intent to defraud, and (3) improperly imposed a total term of probation that was in excess of the five year statutory limit.

The trial court found the following facts.[3] In early 1991, the defendant and Karl Skoog met and discussed

another, he falsely makes, completes or alters a written instrument, or issues or possesses any written instrument which he knows to be forged."

[2] General Statutes § 53a-32 provides in pertinent part: "(a) At any time during the period of probation . . . the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation . . . or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. . . .

"(b) If such violation is established, the court may continue or revoke the sentence of probation . . . or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by reliable and probative evidence."

[3] We note that the trial court orally rendered its decision after hearing evidence on the matter. The court, however, never issued a written memorandum of decision, or signed and filed a transcript of its oral decision. In response to the defendant's oral request for an articulation of the bases for its decision, the trial court issued a detailed statement on the record of its factual findings. Although not fully complying with Practice Book § 4059, which requires oral decisions to be transcribed, signed and filed, the court's statement of its findings is sufficiently detailed and concise for our review. See *Fiddleman* v. *Redmon*, 31 Conn. App. 201, 209 n.6, 623

the possibility of having the defendant build a house for Skoog. On or about April 3, 1991, they settled on a proposal that included the purchase of lot five, Upper Grassy Hill Road in Woodbury. The defendant agreed to present an offer to purchase to the owner of the lot, John Filchak, and, on April 5, Skoog gave the defendant an $1800 deposit for the land purchase.[4] The defendant thereafter presented Skoog with a copy of the offer to purchase, which was ostensibly signed by John Filchak and dated April 10, 1991.

After Skoog encountered difficulty securing a mortgage, he and the defendant agreed to have the contract for the lot purchase made in the defendant's name. On May 20, the defendant requested an additional deposit of $1712, which Skoog agreed to provide on the condition that the amount be held in escrow by either his attorney or the defendant's attorney. The defendant advised Skoog that Robert Cartoceti would be his attorney and Skoog issued a check to Cartoceti, as trustee. Upon receipt of the check, the defendant signed Cartoceti's name on the check and deposited it into his personal account.

In June, 1991, Skoog contacted the Drakely Agency concerning the agreement between the defendant and Filchak to purchase lot five. He was informed that no contract existed. Skoog confronted the defendant and requested the return of his deposits, in response to which the defendant gave Skoog a check in the amount of $2150. When Cartoceti was contacted by Skoog's attorney regarding the balance in escrow, Cartoceti

A.2d 1064, cert. denied, 226 Conn. 915, 628 A.2d 986 (1993); *State* v. *Rivera*, 30 Conn. App. 224, 225 n.1, 619 A.2d 1146, cert. denied, 225 Conn. 913, 623 A.2d 1024 (1993); cf. *State* v. *Salerno*, 36 Conn. App. 161, 165–66, 649 A.2d 801 (1994).

[4] Later in the month, Skoog forwarded to the defendant an additional $350 for drilling permits and driveway construction material.

informed him that he had no knowledge of any deposit and had never represented the defendant.

On July 8, the defendant returned the remaining $1712 to Skoog. On that same day, the defendant went, upon request by the police, to the Southbury police station, where he was advised of his *Miranda* rights and voluntarily admitted to signing Cartoceti's name to the check and signing Filchak's name to the offer to purchase.

The defendant was subsequently charged with forgery in the second degree, forgery in the third degree and attempted larceny in the fourth degree. He was also charged with a violation of probation. At the close of the state's case, the court, acting on the defendant's motion for judgment of acquittal, acquitted the defendant of forgery in the second degree, but permitted the state to proceed on the first count on the lesser included offense of forgery in the third degree. The court also acquitted the defendant of attempted larceny.

Following trial, the court found the defendant guilty of both counts of forgery in the third degree, as well as violation of probation. The court committed him to the custody of the commissioner of correction to serve concurrent sentences of six months each for the counts of forgery, those sentences to be served concurrently with a sentence of one year for the violation of probation, execution suspended after six months, with two years probation. This appeal followed.

I

FIRST COUNT

The defendant first claims that the trial court improperly convicted him on the first count of the lesser included offense of forgery in the third degree.[5] He

---

[5] The first count concerned the defendant's act of signing Filchak's name to the offer to purchase lot five.

proffers three arguments to support this claim, which we address seriatim.

## A

### LESSER INCLUDED OFFENSE

The defendant asserts that his conviction on the first count was improper because forgery in the third degree is not a lesser included offense of forgery in the second degree. Practice Book § 883[6] permits the trial court, when granting a judgment of acquittal as to a principal offense, to deny a motion for acquittal as to any lesser included offense if the evidence would reasonably permit a finding of guilty. The defendant contends that the language of § 883 presupposes the legal existence of the lesser included offense. Consequently, he argues, when the trial court granted his motion for judgment of acquittal as to forgery in the second degree, it could not have properly allowed the prosecution to proceed on forgery in the third degree, as the latter offense is not a lesser included offense of the former.

The defendant raises this claim for the first time on appeal. At trial, in his motion for judgment of acquittal at the close of the state's case, he argued that there was insufficient evidence to permit a finding of guilty of forgery in the third degree as a lesser included offense of the first count. He did not, however, argue that forgery in the third degree is not a lesser included offense of forgery in the second degree. " 'This court will not review issues of law that are raised for the first time on appeal.' " *State* v. *Beliveau*, 36 Conn. App. 228,

[6] Practice Book § 883 provides in pertinent part: "After the close of the prosecution's case in chief or at the close of all the evidence, upon motion of the defendant or upon his own motion, the judicial authority shall order the entry of a judgment of acquittal as to any principal offense charged and as to any lesser included offense for which the evidence would not reasonably permit a finding of guilty."

242, 650 A.2d 591 (1994), quoting *State* v. *Harvey*, 27 Conn. App. 171, 186, 605 A.2d 563, cert. denied, 222 Conn. 907, 608 A.2d 693 (1992); see Practice Book § 4185. Accordingly, we decline to review this claim.

B

INSUFFICIENCY

The defendant next argues that his conviction on the first count was improper because the state failed to prove what it alleged in the information, that is, that the defendant falsely made a contract that, if completed, would create and transfer a legal right to property.

The defendant's argument is relevant to the question of whether he could properly be convicted of forgery in the second degree. The trial court, however, acquitted the defendant of that offense and convicted him only of forgery in the third degree. Consequently, the state, to secure a conviction, needed to prove only the elements of forgery in the third degree and not those of forgery in the second degree.[7]

A conviction of forgery in the third degree requires proof that, "with intent to defraud, deceive or injure another," a person falsely made, completed or altered a written instrument, or issued or possessed any written instrument which he knew to be forged. General Statutes § 53a-140. A "written instrument" is defined as "any instrument or article containing written or printed matter or the equivalent thereof, used for the purpose of reciting, embodying, conveying or record-

---

[7] General Statutes § 53a-139 (a) (1) provides in pertinent part: "A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument or issues or possesses any written instrument which he knows to be forged, which is or purports to be, or which is calculated to become or represent if completed . . . [a] contract . . . which does or may evidence, create, transfer, terminate or otherwise affect a legal right . . . ."

ing information . . . which is capable of being used to the advantage or disadvantage of some person." General Statutes § 53a-137 (1).

Thus, the state was required to prove only that the defendant falsely made a written instrument, not a contract that if completed would create and transfer a legal right to property. His argument, then, that the state failed to establish the elements of forgery in the second degree is irrelevant to his claim that he was improperly convicted of forgery in the third degree.

## C

### INTENT

In the third part of his first claim, the defendant argues that forgery requires an intent to injure, not merely an intent to deceive, and that there was insufficient evidence of any intent to injure. He contends that an intent to injure is a necessary element of forgery because the intent to deceive written into the statute includes within it an injurious purpose. Thus, he posits, an intent to deceive devoid of an intent to injure is not enough to sustain a forgery conviction. Because the trial court failed to find an intent to injure,[8] the defendant claims that his forgery conviction was improper. We disagree.

In interpreting the specific intent element of § 53a-140, we must adhere to "well defined principles of statutory interpretation that require us to ascertain and give effect to the apparent intent of the legislature. . . . To determine the intent of the legislature, we first consider whether the statutory language yields a plain and unambiguous resolution. . . . If the words are clear and unambiguous, it is assumed that [they] express the intention of the legislature . . . and we need inquire no further. . . . The words of a statute

---

[8] The defendant concedes that the trial court found an intent to deceive.

must be interpreted according to their ordinary meaning unless their context dictates otherwise. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Mattioli*, 210 Conn. 573, 576, 556 A.2d 584 (1989). Also, General Statutes § 1-1 (a) mandates that "[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ."[9]

A conviction of forgery, in all three degrees, requires the state to prove an "intent to defraud, deceive or injure another." See General Statutes §§ 53a-138, 53a-139 and 53a-140. "The use of the disjunctive 'or' between the . . . parts of the statute indicates a clear legislative intent of separability." *State* v. *Chapman*, 227 Conn. 616, 622, 632 A.2d 674 (1993), quoting *State* v. *Dennis*, 150 Conn. 245, 248, 188 A.2d 65 (1963). It is clear, then, that an intent to deceive, independent of an intent to injure, satisfies the statute's specific intent element.

The core of the defendant's argument, however, is that an intent to deceive entails the concept of injurious intent, that an intent to deceive means an intent to deceive in a manner calculated to cause injury. We disagree with the defendant's interpretation of this phrase. It is important to note that the specific intent element of the forgery statute is satisfied by an intent to defraud as well as an intent to deceive. The ordinary meaning of the phrase "to deceive" is "to cause to believe the false. . . . Deceive indicates an inculcating of one so that he takes the false as true, the unreal as existent, the spurious as genuine . . . ."

[9] We recognize that § 53a-140 is a penal statute, which must be construed strictly in favor of the accused. *State* v. *Somerville*, 214 Conn. 378, 384, 572 A.2d 944 (1990). While this is true, the strict construction of a penal statute nonetheless "must accord with common sense and commonly approved usage of the language." *State* v. *Edwards*, 201 Conn. 125, 132, 513 A.2d 669 (1986).

Webster's Third New International Dictionary. In contrast, "to defraud" means "to take or withhold from (one) some possession, right, or interest by calculated misstatement or perversion of truth, trickery, or other deception." Id.

To defraud, then, means to deceive in order to cheat or to deceive in a manner calculated to cause injury. The defendant proposes an interpretation of an intent to deceive that is the equivalent of an intent to defraud. It is axiomatic " 'that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous.' " *Frillici* v. *Westport*, 231 Conn. 418, 432, 650 A.2d 557 (1994). If we were to adopt the defendant's interpretation, the legislature's inclusion of both an intent to deceive and an intent to defraud in the forgery statutes would be redundant.

We therefore conclude that an intent only to deceive, without an intent to injure, satisfies the specific intent element of the forgery statutes.[10] The defendant was properly convicted of forgery in the third degree on the first count.

## II

### SECOND COUNT

The defendant next claims that the trial court improperly convicted him of forgery in the third degree on the second count, which concerned his endorsing Cartoceti's name on the check drafted by Skoog and depositing it into his personal account. To support this claim, the defendant first reiterates his argument that the state introduced insufficient evidence of an intent

---

[10] Our interpretation of an intent to deceive is supported by one of the purposes for the criminalization of forgery, which is to safeguard "confidence in the genuineness of documents relied upon in commercial and business activities." W. LaFave, Criminal Law (1972) § 90, p. 671.

to injure, which, he claims, is a required element of forgery.[11] The defendant also asserts that he lacked the intent to defraud because, by the provisions of the binder agreement,[12] he was entitled to hold the funds from the check in his account pending the completion of the transaction.

At the close of evidence, the defendant moved for judgment of acquittal, arguing that there was insufficient evidence to disprove the fact that he had a valid claim of right to hold the funds in his personal account. He contended that you cannot have an intent to defraud if you honestly, but erroneously, believe that you have a lawful right to the property at issue. Because he honestly believed that the provisions of the binder agreement afforded him a right to deposit the check into his personal account, the defendant argued that he could not be convicted of forgery.

Again, the defendant's argument falls wide of its mark. Even if the defendant had a valid claim of right to hold the funds in escrow himself, or even if he honestly believed this to be the case, he nonetheless endorsed Cartoceti's name on a check without authorization. The key question is not whether the defendant honestly believed he had a right to deposit the funds from the check into his account, but whether he honestly believed that he had a right to sign Cartoceti's name to the check. The defendant makes no such claim. Thus, his argument that he had a right to deposit the funds into his own account does not support his claim that he lacked an intent to defraud. The defendant was properly convicted of forgery in the third degree on the second count.

[11] The defendant's argument on this point has been addressed and deemed unpersuasive in part I C of this opinion.

[12] The binder agreement was between the defendant, as seller, and Skoog, as buyer, "to build a new construction" on lot five. It provided that the "Buyers do hereby deposit with John Yurch, the Seller, $1712 to be held in escrow."

## III

### PROBATION SENTENCING

Finally, the defendant asserts that the trial court inappropriately imposed an additional period of probation when it sentenced him for violation of probation. He argues that the imposition of an additional two year period of probation to an original five year period contravened General Statutes § 53a-32 (b)[13] and *State* v. *Guckian*, 27 Conn. App. 225, 246–47, 605 A.2d 874, aff'd, 226 Conn. 191, 627 A.2d 407 (1993). While the state does not agree with the defendant's analysis under *Guckian*, it does concede that the sentence imposed by the trial court is improper. We agree that the sentence is inappropriate.

The following history is relevant to the disposition of this issue. In 1988, prior to the events giving rise to this case, the defendant pleaded guilty to thirty-eight counts of forgery in the second degree. As a result of his conviction, he was sentenced to three years of imprisonment, execution suspended, and five years probation on each count, to be served concurrently. The defendant's probationary period commenced on December 22, 1988, and was tolled on October 23, 1992, with the issuance of a warrant for violation of probation[14] stemming from Skoog's complaint in the current matter. Consequently, three years and ten months of the original probation period had gone by when the probation violation warrant issued.

After trial, the court found that the defendant's conviction of two counts of forgery in the third degree constituted a violation of probation. The court thereupon sentenced him to one year, execution suspended after

---

[13] See footnote 2.

[14] See General Statutes § 53a-31 (b); *State* v. *Egan*, 9 Conn. App. 59, 73, 514 A.2d 394 (1986).

six months, and two years probation, to be served concurrently with the sentences on the forgery convictions.

We conclude that the trial court contravened General Statutes § 53a-30 (c)[15] when it ordered an additional two years probation. In so doing, the court imposed a probationary period that, together with the portion that had already been served, exceeded the five year limit on felonies mandated by General Statutes § 53a-29 (d) (1).[16] As the court in 1988 had originally imposed the maximum probationary period of five years, and the defendant had only fourteen months left to serve on that period, the trial court could have imposed no more than an additional period of fourteen months probation. By imposing an additional two year period, it exceeded the five year limit.

The judgment of conviction as to the two counts of forgery in the third degree is affirmed. The judgment of violation of probation is reversed as to the sentence only and the case is remanded for further sentencing proceedings in accordance with this opinion.

In this opinion the other judges concurred.

---

[15] General Statutes § 53a-30 (c) provides in pertinent part: "At any time during the period of probation or conditional discharge, after hearing and for good cause shown, the court may modify or enlarge the conditions, whether originally imposed by the court under this section or otherwise, and may extend the period, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29. . . ."

[16] General Statutes § 53a-29 (d) (1) provides in pertinent part: "The period of probation . . . shall be as follows . . . [f]or a felony . . . not more than five years . . . ."