[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION — DEFENDANT'S MOTION TO DISMISS
The defendant moves to dismiss the information charging him with thirteen counts of criminal contempt of court in violation of Connecticut Practice Book §§ 1-15 and 1-21. The court finds in favor of the defendant.
The facts essential to the court's decision on this motion are not in dispute. On June 12, 1991, the defendant pled guilty in this court to two counts of risk of injury to a minor in violation of General Statutes § 53-21. The charges related to the defendant's sexual misconduct with each of his wife's two daughters from a previous marriage.
The defendant's plea was the result of extensive negotiations between him and the state, and the agreement that was reached was confirmed during the court proceedings by counsel and the defendant at the time of the plea. The plea agreement provided that the defendant would be sentenced to ten years on each count to run concurrently, sentence suspended, and probation of five years. It is important to note here that the maximum period of probation allowed by statute at that time for violation of §53-21 was five years. General Statutes § 53a-29 (Rev. to 1994). The defendant thus was to receive the maximum period of CT Page 8900 probation to serve. Two separate special conditions of the probation — the only ones that are at issue in this case — would be (1) that the defendant have no contact with either of the victims, his stepdaughters, until they reached the age of twenty-one, respectively, and (2) that he sign a contract with the state's attorney promising to have no such contact.[1] It was noted that, based on their ages at the time of sentencing, the girls would attain age twenty-one after the probation period had expired. The court (Damiani, J.) approved the plea agreement and, on September 13, 1991, Judge Damiani sentenced the defendant in accordance with that agreement.
The defendant satisfactorily completed his probation in September 1996.
In June 1997, the state filed in this court a "Motion for Contempt Proceedings to Specifically Enforce a Plea Agreement Incorporated in (a) Judgment." The motion followed an investigation by the state that convinced the state's attorney's office that the defendant had violated the agreement to have no contact with his stepdaughters. In particular, the state's attorney's office obtained the statements of witnesses who said they saw the defendant with either or both of the stepdaughters on numerous occasions beginning in October 1996 and continuing through June 1997. This alleged conduct occurred, therefore, after the defendant's probation had ended but prior to the time either of the stepdaughters had attained age twenty-one. Based on this information, the state sought a warrant for the defendant's arrest for contempt of court, specifically that the defendant had violated an order of the court to have no contact with either of the girls until the girl attained age twenty-one.
On July 16, 1997, the court held a hearing on the state's motion. The defendant, his attorney, and the assistant state's attorney were present. The principal issue in dispute at the hearing on the motion was whether the court has subject matter jurisdiction over the defendant's post-probation activities and conduct. The state and the defendant agreed that the court could decide that issue at that time, prior to the issuance of an arrest warrant. In particular, in response to Judge Damiani's summary of the issue, the defendant agreed that he would not "attack" the court's decision to assume jurisdiction except by appeal to an appellate court.
Following oral argument on the motion, the parties submitted CT Page 8901 briefs.
On September 13, 1997, the court (Damiani, J.) granted the state's motion, essentially confirming that the court has subject matter jurisdiction over violations of the no-contact agreement notwithstanding that the violations allegedly occurred after the expiration of the defendant's probation. The court held, "This court finds that the plea agreement was incorporated into the Court's judgment and sentence and is enforceable beyond the term of probation. Hence, criminal contempt proceedings may be initiated against Arthur Welwood. Court finds that there is probable cause that agreement was breached."
Judge Damiani then signed the warrant for the defendant's arrest on thirteen counts of criminal contempt of court, each count alleging a separate incident of contact between one or both of the girls.
Following the defendant's arrest, he filed the motion to dismiss that is presently before the court.
The defendant advances the following arguments in support of his motion: (1) that the court lacks subject matter jurisdiction over post-probation conduct; (2) that a conviction would violate state and federal constitutional prohibitions against double jeopardy; (3) that the prosecution of the contempt charges would abridge his right to associate with his wife and stepchildren; (4) that the arrest warrant was not signed by a neutral and detached magistrate; (5) that prosecution of the contempt charges would violate the statute of limitations; (6) that the criminal contempt statute is void for vagueness; and (7) that the statute violates the principle of separation of powers. The court has carefully reviewed arguments (2) through (6) and concludes that they may not be sustained. The court agrees with the defendant on his first argument, however, and also finds that argument (7) is essentially subsumed within that argument. These arguments are dispositive of the defendant's motion in his favor.
The defendant contends that this court lacks subject matter jurisdiction over the contempt charge because the court lacked the power to issue the original order which the defendant is now accused of violating. Before addressing the defendant's claim that the court's original order was void, it is necessary to dispose of some preliminary arguments advanced by the state. CT Page 8902
The following additional undisputed facts are pertinent at this point. In stating the conditions of the defendant's probation during the sentencing on September 13, 1991, Judge Damiani ordered that "you're not to have contact — written, oral or physical — with the stepdaughters — that's until they reach the age of twenty-one." The judge further ordered, "You're also to enter into the agreement which I have a copy of — and I believe stated it correctly — and that's to be signed today by you, by Mr. Massameno (assistant state's attorney) and Mr. Brown (defense counsel)."
In relevant part, the agreement provides as follows:
 In consideration of the plea agreement entered into by the State of Connecticut and me on July 12, 1991, I hereby agree to the following, in addition to the other conditions of my probation.
 1. I will have no contact of any kind, direct or indirect with the two natural children of my current wife, June Welwood, who now are twelve years of age and eight years of age, until each of them reaches her twenty-first birthday. . . .
 4. I agree that the provisions of this agreement may be enforced by the state in the criminal division of the Superior Court in Hartford until they expire by their terms.
The defendant, his attorney, and the assistant state's attorney signed the agreement referred to above on September 13, 1991.
As noted, the judge issued two orders: (1) that the defendant refrain from contacting the children until age twenty-one and (2) that the defendant enter into a separate contract with the state that he would have no such contact.
Preliminarily, the state seeks to defend the court's first order, summarized above, on the basis of res judicata, collateral estoppel and law of the case theories. None of these may be sustained.
"Under the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim . . . res CT Page 8903 judicata applies to criminal as well as civil proceedings . . . res judicata may operate to preclude relitigation by a criminal defendant as well as by the state . . . (However), the interest in achieving finality in criminal proceedings must be balanced against the interest in assuring that no individual is deprived of his liberty in violation of his constitutional rights . . . Whether two claims in a criminal case are the same for the purposes of res judicata should therefore be considered in a practical frame and viewed with an eye to all of the circumstances of the proceedings." (Citations and internal quotation marks omitted.) State v. Aillon, 189 Conn. 416, 423-425
(1983).
"Collateral estoppel, or issue preclusion, is the doctrine that bars relitigation, in a second action between the same parties brought upon a different claim, of issues already determined in the first action." Id., n. 8.
In this case, the state is not claiming that the defendant violated a condition of his probation during the period of that probation. Nor is the state seeking specific performance, damages, or some other contractual remedy. Rather, in the context of its res judicata and collateral estoppel arguments, the state is essentially claiming that the 1991 judgment, incorporating the contract signed by the defendant, preserved the court's subject matter jurisdiction over the defendant's conduct and activities after the expiration of his probation. Put another way, the state is claiming that it may enforce the 1991 judgment, as distinguished from bringing an action to enforce the contract, through criminal contempt proceedings brought after the probation has expired and relating to post-probation conduct. This was not, however, a claim or issue that was litigated by the parties or decided by the court at the time the judgment was entered. Indeed, the state's insistence that the defendant sign the separate contract, which specifically provides that it may be separately enforced, indicates that the parties and the court left the issue of the post-probation viability of the judgment undecided.[2]
For all of the above reasons, the state's contention that the doctrines of res judicata and collateral estoppel bar review of the 1991 judgment may not be sustained.
Res judicata and collateral estoppel doctrines, furthermore, do not bar review of Judge Damiani's 1997 ruling that the court CT Page 8904 retained subject matter jurisdiction over the defendant's post-probation conduct. That decision was merely an interlocutory decision by a coordinate judge prior to a final judgment and does not preclude this court's review of the issue at this time.
The state also argues that this court should defer to Judge Damiani's 1997 ruling as the law of the case. This doctrine, while important and useful, "is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked." Westbrookv. Savin Rock Condominiums Assn., Inc., 50 Conn. App. 236, 240
(1998). It should not be invoked when the issue of the court's subject matter jurisdiction is raised. Id. In this instance, the court believes that the doctrine should not be invoked.
The state next contends that even if the court's 1991 order of no contact until the girls reached age twenty-one was invalid, the defendant had a duty to obey it, citing Cologne v. WestfarmsAssociates, 197 Conn. 141, 147 (1985) for the proposition that such duty exists and may be the basis for a contempt citation "however erroneous the action of the court may (have been)."Cologne, however, did not involve, as this case does, a question of subject matter jurisdiction. Indeed, the court in Cologne more specifically held, "[A]n order issued by a court withjurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." (Citation and internal quotation marks omitted. Emphasis added.) Id., 147. The court concludes that the decision in the Cologne case is not controlling in this case, where the defendant is challenging the court's jurisdiction over the subject matter of the court's order; that is, his post-probation conduct. Accordingly, the defendant is not foreclosed from attacking the contempt charges on the basis that the court lacks jurisdiction.
In the absence of a contract or some agreement by the defendant, it is clear that the court had no power to enter a judgment imposing restrictions on the defendant's activities after the expiration of his probation. Any such order would have the effect, in essence, of extending the term of probation. The court is powerless to achieve such a result in a case such as this, where the period of probation to which the defendant was sentenced and which he served was the maximum allowable by statute at that time. General Statutes § 53a-30 (c); State v.Yurch, 37 Conn. App. 72 (1995) CT Page 8905
In the present case, however, the state claims that the defendant's agreement and the contract provisions incorporated in the court's judgment override the statutory limitation on the court's jurisdiction. In this regard, the state's argument is that the defendant in agreeing to plead guilty and accept the judgment, which incorporated the contract, essentially waived objections to the court's continuing jurisdiction or agreed to it. Our law does not permit such a waiver or agreement, however. Subject matter jurisdiction "is a matter of law and can neither be waived nor conferred by consent of the accused." State v.Jones, 166 Conn. 620, 627 (1974).
Finally, the state argues that the court has continuing jurisdiction to enforce by contempt proceedings the contract signed by the defendant and incorporated in the 1991 judgment. The court disagrees. In Kennedy v. Kennedy,177 Conn. 47 (1979), the court was confronted by an analogous situation. In Kennedy, the plaintiff sought to have the defendant held in contempt for failure to comply with provisions of a separation agreement relating to child support. The agreement had been incorporated in the court's judgment of divorce. Although the applicable statute, General Statutes § 46b-56, gave the court power to make and enforce support orders as incidents to its divorce decrees only with respect to minors, the agreement provided that the defendant would continue to pay support for the child after he reached the age of majority.[3]
In denying the plaintiff's motion to hold the defendant in contempt, the court distinguished between using the court's judgment as the basis of contempt proceedings on the one hand and, on the other hand, pursuing a separate action to enforce the contract. The court held that "[t]he rights of the parties to a judgment of the court as distinguished from an action based solely on a contract do not arise from a contract between the parties where some of the provisions of the contract are incorporated in a judgment, but arise from the order of the court pursuant to statutory obligations when such orders are based on statutory provisions . . . it is the law as set forth in the statutes rather than the contract which imposes the obligations. . . ." Kennedy v. Kennedy, supra, 177 Conn. 50-51. The court stated that the parties to such an agreement "cannot impose jurisdiction on the court beyond that granted by the statutes" even if the agreement is incorporated in the court's CT Page 8906 judgment. Id., 52-53.
In this case, as in the Kennedy case, the state's use of the 1991 judgment as the basis of the present contempt proceeding is not available because the court never had the power under the applicable statutes to order what the parties' agreement provided; namely, that the defendant would continue to avoid contact with the children. after the expiration of his probation. Again as in Kennedy, this court is not ruling on whether or not the contract between the state and the defendant is separately enforceable or by whom or what — the appropriate remedy for breach might be. The court is simply holding that the defendant's conduct after the expiration of his probation is not a legitimate basis for criminal contempt of court proceedings.
Lastly, the court would address the state's argument in its brief that "[t]o allow the defendant to challenge now the validity of a judgment that he induced the Court to render would stand our system of criminal procedure on its head. It would encourage the sand-bagging of prosecutorial officials and judges and reward a defendant for withholding a claim of invalidity only after it may be too late to correct it." The short answer to this argument is that this court cannot confer jurisdiction on itself regardless of the consequences of the lack of such jurisdiction. Only the legislature has the power to confer jurisdiction and it had not done so in 1991 when the judgment was entered. The court would also observe, however, that the state's concerns in this case are balanced by the potential danger that in another case a defendant might be coerced into accepting an illegal or excessive probation in order to avoid incarceration. In other words, the state should not have the right to bargain for a sentence that the legislature has not authorized. If the court were to uphold the provision of the judgment in question in this case, however, it would in effect be granting the state exactly that unfair bargaining position.
For all of the reasons set forth above, the defendant's motion to dismiss is granted.
MALONEY, J.