## STATE OF CONNECTICUT *v.* ARTHUR WELWOOD
## (SC 16377)

Sullivan, C. J., and Katz, Palmer, Vertefeuille and Ford, Js.

Argued May 25—officially released October 16, 2001

*John M. Massameno,* senior assistant state's attorney, with whom, on the brief was *James E. Thomas,* state's attorney, for the appellant (state).

*Jon L. Schoenhorn,* for the appellee (defendant).

*Shelley R. Sadin* filed a brief for the Connecticut Criminal Defense Lawyers Association as amicus curiae.

*Opinion*

SULLIVAN, C. J. The central issue in this appeal is whether a sentencing court has subject matter jurisdiction to impose conditions of probation that remain in effect after the expiration of the probation. The defendant, Arthur Welwood, was charged with sexual assault in the first degree in violation of General Statutes (Rev. to 1989) § 53a-70,[1] three counts of sexual assault in the fourth degree in violation of General Statutes (Rev. to 1987) § 53a-73a,[2] and two counts of risk of injury to or impairing the morals of a child in violation of General Statutes (Rev. to 1987) § 53-21,[3] in connection with a

[1] General Statutes (Rev. to 1989) § 53a-70 (a) provides: "A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

[2] General Statutes (Rev. to 1987) § 53a-73a provides: "(a) A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age, or (B) mentally defective or mentally incapacitated to the extent that he is unable to consent to such sexual contact, or (C) physically helpless, or (D) less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare, or (E) in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over such other person; or (2) such person subjects another person to sexual contact without such other person's consent, or (3) such person engages in sexual contact with an animal or dead body.

"(b) Sexual assault in the fourth degree is a class A misdemeanor."

[3] General Statutes (Rev. to 1987) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

series of incidents that took place between 1988 and 1990. The alleged victims of the crimes were the defendant's two stepdaughters.

On July 12, 1991, the defendant entered into a plea agreement with the state and pleaded guilty to two counts of risk of injury to a child, and the state agreed to nolle the remaining charges. On September 13, 1991, the defendant was sentenced to ten years incarceration, execution suspended, and five years of probation with specific conditions. Pursuant to the conditions of probation, the defendant was to: (1) have no written, oral or physical contact with the minor victims, until they reached the age of twenty-one, unless, after a full hearing, a criminal judge ordered contact for therapeutic purposes only; (2) pay $7000 toward the past therapy bills of his natural daughter; (3) pay unreimbursed expenses for his natural daughter to an annual maximum of $2500 for a period of five years; (4) have no written, oral or physical contact with his natural daughter during probation unless she requested contact; (5) pay all unreimbursed medical and psychological expenses of the two victims until they reached the age of eighteen years; (6) obtain treatment through special services and abide by its conditions; (7) not reside at the family home, even if the two victims were not present there; (8) have no unsupervised contact with any other minor child under the age of sixteen years; (9) raise the issue of his alleged sexual abuse of his natural daughter during his treatment; and (10) enter into a written agreement concerning contact with the victims and payment of fees for their psychological care. The trial court noted that any violation of the defendant's treatment contract would be grounds for termination of treatment and referral back to the probation department. In accordance with the last condition of probation, the defendant signed an agreement that provided in relevant part: "1. I will have no contact of any kind,

direct or indirect with the two natural children of my current wife . . . who now are twelve years of age and eight years of age, until each of them reaches her twenty-first birthday . . . ."[4]

Between October, 1996, and June, 1997, certain witnesses saw the defendant with one or both of his stepdaughters, neither of whom had yet reached age twenty-one. The witnesses gave statements to the state's attorney's office. In June, 1997, one year after the defendant's period of probation had expired without incident, the state filed a motion for contempt proceedings to enforce the plea agreement incorporated in the judgment. The trial court, *Damiani, J.*, granted the motion on September 13, 1997, stating: "This court finds that the plea agreement was knowingly and voluntarily entered into by the defendant. Further, said agreement was incorporated into the court's judgment and sentence and is enforceable beyond the term of probation. Hence, criminal contempt proceedings may be initiated against [the

---

[4] The terms of the no contact agreement also contained certain limited exceptions: "2. Contact between these two children and me may occur at the request of the therapist for the children provided:

"(a) a motion is brought by me in the criminal division of the Superior Court in Hartford seeking such contact;

"(b) a hearing is held on such request by a judge of the criminal division of the Superior Court in Hartford, and such contact shall be permitted only if the court concludes that such contact is in the best therapeutic interests of such children;

"(c) the court shall, upon the request of either the state's attorney or me, appoint an independent psychological evaluator to render a report to the court on the question whether such contact will be in the best interests of the children and such evaluator shall be available at such hearing to address his report; and

"(d) in no event shall such contact with such children occur outside of such therapist's presence and office.

"3. I agree to pay for all non-reimbursed expenses for any psychological care and treatment for such children as deemed appropriate by the criminal division of the Superior Court until each child attains her eighteenth birthday.

"4. I agree that the provisions of this agreement may be enforced by the state in the criminal division of the Superior Court in Hartford until they expire by their terms."

defendant]." The state then filed an information alleging thirteen counts of criminal contempt by the defendant in violation of what were then §§ 7G (4)[5] and 7M of the Practice Book.[6] Judge Damiani then signed a warrant for the defendant's arrest.

Following his arrest, the defendant filed a motion to dismiss, claiming that the trial court lacked subject matter jurisdiction over postprobation conduct.[7] The trial court, *Maloney, J.*, concluded that the sentencing court had issued two distinct orders: (1) that the defendant refrain from contacting the victims until they reached age twenty-one; and (2) that the defendant enter into a written agreement with the state that he have no such contact. The trial court further determined that, "[i]n the absence of a contract or some agreement

---

[5] At the time the state filed the information charging the defendant with criminal contempt, Practice Book § 7G provided in relevant part: "The judicial authority may punish by fine or imprisonment or both. . . . (4) Any person disobeying in the course of a civil, family, juvenile or criminal proceeding any order of a judicial authority." Prior to July 29, 1997, when it was temporarily renumbered as § 7G, this rule had been codified as § 986 of the 1978–1997 Practice Book. It was recodified in 1998 as § 1-15 and was repealed effective January 1, 2000.

[6] At the time the state filed the information charging the defendant with criminal contempt, Practice Book § 7M provided in relevant part: "The judgment of contempt shall be prepared within a reasonable time by the clerk and shall be signed by the judicial authority and entered on the record. . . ." Prior to July 29, 1997, when it was temporarily renumbered as § 7M, this rule had been codified as § 994 of the 1978–1997 Practice Book. It was recodified as § 1-21 in 1998 and amended, in ways not significant for purposes of this appeal, effective January 1, 2000.

[7] The defendant also claimed that: (1) a conviction would violate the state and federal constitutional prohibitions against double jeopardy; (2) the prosecution of the contempt charges would abridge his right to associate with his wife and stepchildren; (3) the arrest warrant was not signed by a neutral and detached magistrate; (4) the prosecution of the contempt charges would violate the statute of limitations; and (5) the criminal contempt statute is void for vagueness. The trial court rejected these claims. Last, the defendant claimed that the statute violated the principle of separation of powers. The trial court found this last claim to be subsumed within the defendant's claim that the court lacked subject matter jurisdiction over the defendant's postprobation conduct.

by the defendant, it is clear that the court had no power to enter a judgment imposing restrictions on the defendant's activities after the expiration of his probation," where the period of probation to which the defendant had been sentenced was the statutory maximum. General Statutes (Rev. to 1991) §§ 53a-29[8] and 53a-30.[9] The

[8] General Statutes (Rev. to 1991) § 53a-29 provides in relevant part: "(a) The court may sentence a person to a period of probation upon conviction of any crime, other than a class A felony, if it is of the opinion that: (1) Present or extended institutional confinement of the defendant is not necessary for the protection of the public; (2) the defendant is in need of guidance, training or assistance which, in his case, can be effectively administered through probation supervision; and (3) such disposition is not inconsistent with the ends of justice. . . .

"(c) . . . When a person is sentenced to a period of probation the court shall impose the period authorized by subsection (d) and may impose any conditions authorized by said section 53a-30. . . .

"(d) The period of probation or conditional discharge, unless terminated sooner as hereinafter provided, shall be as follows: (1) For a felony, not more than five years . . . ."

[9] General Statutes (Rev. to 1991) § 53a-30 provides in relevant part: "(a) When imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant . . . (2) undergo medical or psychiatric treatment and remain in a specified institution, when required for that purpose; (3) support his dependents and meet other family obligations; (4) make restitution of the fruits of his offense or make restitution, in an amount he can afford to pay or provide in a suitable manner, for the loss or damage caused thereby and the court may fix the amount thereof and the manner of performance . . . (6) post a bond or other security for the performance of any or all conditions imposed; (7) refrain from violating any criminal law of the United States, this state or any other state . . . (12) satisfy any other conditions reasonably related to his rehabilitation. . . .

"(b) When a defendant has been sentenced to a period of probation, the office of adult probation may require that the defendant comply with any or all conditions which the court could have imposed under subsection (a) which are not inconsistent with any condition actually imposed by the court.

"(c) At any time during the period of probation or conditional discharge, after hearing and for good cause shown, the court may modify or enlarge the conditions, whether originally imposed by the court under this section or otherwise, and may extend the period, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29. The court shall cause a copy of any such order to be delivered to the defendant and to the probation officer, if any.

"(d) The period of participation in an alternate incarceration program,

trial court also concluded that the defendant could not agree to waive objections to the court's continuing jurisdiction. *State* v. *Jones*, 166 Conn. 620, 627, 353 A.2d 764 (1974) (jurisdiction "is a matter of law and can neither be waived nor conferred by consent of the accused").[10] Accordingly, the trial court granted the defendant's motion to dismiss.

On September 13, 1999, the state appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.[11] The state claims that for a variety of reasons, the trial court improperly dismissed the contempt proceedings. First, the state claims that the defendant was barred from challenging, in the contempt proceeding, the propriety of the original judgment, because the trial court had both personal jurisdiction over the defendant and subject matter jurisdiction over the criminal case, the no contact order was not "transparently invalid," and the defendant did not appeal the original sentence. Second, the state claims that the substantial interest in the finality of judgments militates against a collateral attack on the judgment nearly six years after it was rendered, notwithstanding the fact that the attack was premised on jurisdictional grounds.

unless terminated sooner, shall not exceed the period of probation authorized by section 53a-29 or two years, whichever is less."

[10] The trial court noted that it was "not ruling on whether or not the contract between the state and the defendant is separately enforceable or by whom or what the appropriate remedy for breach might be."

[11] Practice Book § 65-1 provides: "When, pursuant to General Statutes § 51-199 (c), the supreme court (1) transfers to itself a cause in the appellate court, or (2) transfers a cause or a class of causes from itself to the appellate court, the appellate clerk shall notify all parties and the clerk of the trial court that the appeal has been transferred. A case so transferred shall be entered upon the docket of the court to which it has been transferred. There shall be no fee on such transfer. The appellate clerk may require the parties to take such steps as may be necessary to make the appeal conform to the rules of the court to which it has been transferred, for example, supply the court with additional copies of the record and the briefs."

Third, the state contends that principles of res judicata and collateral estoppel preclude relitigation of the validity of both the original judgment of conviction and the state's postjudgment request for a criminal contempt referral, neither of which the defendant appealed. Fourth, the state maintains that the trial court has the power to render and enforce postprobation terms of plea agreements because: (1) Connecticut courts favor plea agreements that are negotiated fairly and are not against public policy; (2) Connecticut courts have determined that both parties to a plea agreement are entitled to the enforcement of its terms and that the authority to enforce such agreements lies with the judiciary; (3) such power flows from the court's constitutional and statutory jurisdiction; and (4) parties to plea agreements who, like the defendant, have reaped substantial benefits under the agreements should be estopped from attacking those agreements. Fifth, the state claims that the doctrine of separation of powers is not implicated here because: (1) the enforcement of a plea agreement is not "punishment" beyond that authorized by the legislature; (2) postprobationary terms of a plea agreement do not constitute an extension of probation beyond that authorized by the legislature; and (3) once a plea agreement has been incorporated into a court judgment, the court has the inherent power to enforce its decree by way of a criminal contempt action.[12] We conclude that the sentencing

---

[12] The defendant claims that the trial court properly granted his motion to dismiss on jurisdictional grounds. The defendant also raises the following alternate grounds for upholding the judgment of the trial court: If the trial court improperly dismissed the contempt charges, its judgment nevertheless should be affirmed on the grounds that: (1) the no contact provision of the plea agreement, which extended beyond the maximum term of probation, was not incorporated into the 1991 judgment of conviction and, therefore, any violation of the condition could not form the basis of a contempt charge; (2) the trial court, *Damiani, J.*, was not acting as a neutral and detached magistrate in issuing the arrest warrant for nonsummary criminal contempt, given that the same judge had presided over the original criminal case, and, therefore, it was that judgment that the defendant had allegedly violated;

court exceeded its jurisdiction by imposing probationary conditions that continued beyond the maximum period of probation. Accordingly, we affirm the judgment of the trial court dismissing the criminal contempt action against the defendant for lack of subject matter jurisdiction.

As a preliminary matter, we set forth the standard of review. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting grant of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Southern New England Telephone Co.* v. *Dept. of Public Utility Control*, 64 Conn. App. 134, 137, 779 A.2d 817 (2001).

The defendant seeks to attack collaterally two of the conditions of probation imposed by the sentencing court, namely, that the defendant have no contact with the victims until they reach age twenty-one, and that the defendant enter into a written agreement with the state to that effect. The legislature, by statute, has limited the term of probation that the sentencing court may impose to five years.[13] The sentencing court recognized that its jurisdiction over the defendant, and, therefore, its ability to enforce the conditions of probation, ended after the five year period of probation.[14] Accordingly,

---

and (3) the defendant's due process rights were violated under the "void for vagueness" doctrine because he had no notice that his postprobation actions would subject him to criminal contempt proceedings and there were no statutory guidelines to govern law enforcement in these circumstances. We do not reach any of the defendant's alternative claims.

[13] See footnotes 8 and 9 of this opinion.

[14] In response to the state's assertion that the defendant would be required to pay all nonreimbursed psychological treatment expenses for the victims until they reached age eighteen, the trial court, *Damiani, J.*, responded, "Is

rather than rely on the no-contact condition of probation, which it would be unable to enforce once probation had ended, the sentencing court also required that the defendant enter into the written agreement with the state, which the state could seek to enforce after the term of probation, and the court's jurisdiction, had ended. We agree with the trial court that the sentencing court had no jurisdiction to impose the condition or to require the defendant to enter into such an agreement.

In reaching its decision, the trial court relied on *Kennedy* v. *Kennedy*, 177 Conn. 47, 411 A.2d 25 (1979). In that case, the relevant statute authorized court-ordered support for minor children, i.e., children under eighteen years of age. Id., 49. The parties had entered into an agreement, however, wherein one of the parties agreed to pay support until the child turned twenty-one. Id., 48. After the child turned eighteen, that party ceased paying support. Id., 49. This court held that "parties to an agreement relating to support and education of children cannot impose jurisdiction on the court beyond that granted by the statutes." Id., 52. Furthermore, we concluded that "any order beyond [the age of majority] is of no force and effect as a court order." Id.

The trial court also relied on *State* v. *Yurch*, 37 Conn. App. 72, 654 A.2d 1246, appeal dismissed, 235 Conn. 469, 667 A.2d 797 (1995). In that case, the defendant was found to have violated his probation. At sentencing for that violation, the sentencing court imposed a term of probation that, combined with the period of proba-

[the defendant] going to sign an agreement to that effect? Because once probation ends, my jurisdiction ends over him." The state answered, "Yes, Your Honor. And there is reference to a specific written agreement later as a condition of probation." The state further stated that "the seventh condition, Your Honor, is that the defendant will enter into a written agreement with the state's attorney to abide by . . . both the contact provision concerning [the victims] that extends beyond the period of probation and also the assumption of responsibility for the unreimbursed psychological treatment expenses for [the victims until they reach age eighteen] . . . ."

tion that the defendant already had served under the original sentence, exceeded the statutory limit. Id., 83–84. The Appellate Court concluded that the sentence violated General Statutes § 53a-30 (c).[15] Id., 84.

Relying on *Kennedy* and *Yurch*, the trial court in the present case concluded that, "the state's use of the 1991 judgment as the basis of the present contempt proceeding is not available because the court never had the power under the applicable statutes to order what the parties' agreement provided; namely, that the defendant would continue to avoid contact with the children after the expiration of his probation." It also concluded that "[a]ny such order would have the effect, in essence, of extending the term of probation" authorized by statute. We agree with the reasoning of the trial court. Because the sentencing court had no jurisdiction to impose conditions beyond the maximum term of five years of probation, those conditions were void ab initio. See *Davenport* v. *Quinn*, 53 Conn. App. 282, 293, 730 A.2d 1184 (1999) (judgment that exceeds jurisdiction is void ab initio and is subject to collateral attack).[16] The trial court, therefore, had no subject matter jurisdiction to entertain the state's motion for a criminal contempt proceeding based on the violation of those conditions after the expiration of the five years of probation.

We note that, if the sentencing court's jurisdiction were not limited in this way, then criminal defendants seeking to enter into a plea bargain could agree to

---

[15] General Statutes § 53a-30 (c) provides in relevant part: "At any time during the period of probation or conditional discharge, after hearing and for good cause shown, the court may modify or enlarge the conditions, whether originally imposed by the court under this section or otherwise, and may extend the period, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29. . . ."

[16] Although we conclude that the probation conditions were void ab initio, we do not decide in this case whether the agreement signed by the defendant was enforceable in a civil action under principles of contract law.

greater restrictions on their liberty than the legislature authorized, in order to avoid going to trial. The state's bargaining position could eclipse that of defendants, resulting in excessive periods of probation being imposed on defendants desperate to avoid the possibility of incarceration resulting from a trial and judgment of conviction.

Furthermore, we reject the state's alternative claim that, by signing the agreement, the defendant waived any objection to subject matter jurisdiction. A criminal defendant may not waive the statutory limits on the court's subject matter jurisdiction in a plea agreement. See *State* v. *Vincent*, 194 Conn. 198, 203 n.7, 479 A.2d 237 (1984) ("no party can waive a defect in the court's subject matter jurisdiction"); see also *State* v. *Jones*, supra, 166 Conn. 627 (jurisdiction "is a matter of law and can neither be waived nor conferred by consent of the accused").

Finally, we note that whether the state may enforce the agreement in a civil contract action, rather than in a contempt proceeding, is not at issue in the present case. See *State* v. *Garvin*, 242 Conn. 296, 314, 699 A.2d 921 (1997) (plea bargains governed by contract principles). Accordingly, we need not decide whether the contract is enforceable, or what an appropriate remedy for breach of the agreement might be.

The judgment is affirmed.

In this opinion the other justices concurred.