# IN RE MATTHEW F.*
## (SC 18583)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.**

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case should be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued May 28—officially released August 3, 2010

*John E. Tucker,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman* and *Amor C. Rosario,* assistant attorneys general, for the appellant (department of children and families).

*Rosemarie T. Weber,* for the appellee (respondent father).

*Kimberly A. Pisinski,* for the appellee (petitioner).

*Anne Louise Blanchard* and *Jillian Griswold* filed a brief for Connecticut Legal Services, Inc., et al., as amici curiae.

*Opinion*

KATZ, J. The department of children and families (department) appeals from the order of the trial court granting the motion for services filed by the petitioner, Matthew F., which required the department to, inter alia, provide and pay for appropriate private placement services for Matthew, who had been committed to the department's care prior to his eighteenth birthday, until he attains the age of twenty-one.[1] The department's principal claim on appeal is that the Superior Court for Juvenile Matters lacked jurisdiction over the motion because it was filed after Matthew had attained the age of eighteen and there is no statutory basis for the court's jurisdiction to compel the department to provide services to an individual beyond the age of eighteen. Although we disagree with the department's underlying premise, we conclude that, under the facts established by the trial court, there was no basis for that court's exercise of jurisdiction. Accordingly, we reverse the trial court's decision and remand the case with direction to dismiss the motion for services.

The record reveals the following facts, as found by the trial court or otherwise undisputed, and procedural history. The respondent parents (parents) adopted Matthew and an unrelated girl, both of whom eventually manifested serious mental health issues that the parents had difficulty managing, necessitating intervention by the department starting when Matthew was fourteen years old. After substantiating allegations of physical abuse against Matthew, the department loosely moni-

---

[1] The department appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

tored him and made some effort to support the family, but concentrated its efforts toward assisting Matthew's sister.[2] Matthew's parents kept the department informed about his behavioral problems and repeatedly requested help and advice from the department. Matthew's parents also sought to have him voluntarily admitted to the department's care, pursuant to General Statutes § 17a-11,[3] but the department never moved to seek commitment.

[2] The department contends that the trial court improperly relied on unsworn statements by Matthew's attorney as the basis for its factual findings that the department had failed to adequately assess and respond to Matthew's needs. Matthew contends that these findings were based on credible, uncontested evidence. We express no opinion on the merits of this claim, as our resolution of this appeal rests on jurisdictional grounds. We set forth such facts only to the extent necessary to provide context for the trial court's orders.

[3] General Statutes § 17a-11 provides in relevant part: "(a) The commissioner [of children and families] may, in the commissioner's discretion, admit to the department on a voluntary basis any child or youth who, in the commissioner's opinion, could benefit from any of the services offered or administered by, or under contract with, or otherwise available to, the department. Application for voluntary admission shall be made in writing by the parent or guardian of a child under fourteen years of age or by such person himself or herself if he or she is a child fourteen years of age or older or a youth.

"(b) A child or youth voluntarily admitted to the department shall be deemed to be within the care of the commissioner until such admission is terminated. The commissioner shall terminate the admission of any child or youth voluntarily admitted to the department within ten days after receipt of a written request for termination from a parent or guardian of any child under fourteen years of age or from a child if such child is fourteen years of age or older, or youth, unless prior to the expiration of that time the commissioner has sought and received from the Superior Court an order of temporary custody as provided by law. The commissioner may terminate the admission of any child or youth voluntarily admitted to the department after giving reasonable notice in writing to the parent or guardian of any child under fourteen years of age and to a child fourteen years of age or older, and to any youth. Any child or youth admitted voluntarily to the department may be placed in, or transferred to, any resource, facility or institution within the department or available to the commissioner except the Connecticut Juvenile Training School, provided the commissioner shall give written notice to such child or youth and to the parent or guardian of the child of the commissioner's intention to make a transfer at least ten

In March, 2007, Matthew set a fire that damaged his family's residence, and in June, 2007, he set a fire at the condominium complex where his family temporarily was residing while their house was being repaired. Matthew was arrested and charged in connection with both fires. After his arrest for the second fire, his parents did not post bond, and Matthew was placed at the Manson Youth Institution (Manson) under the care of the department of correction.[4]

On February 28, 2008, approximately one month before his eighteenth birthday and while he still was at Manson, Matthew, through his attorney, filed a petition in the Superior Court for Juvenile Matters, pursuant to General Statutes § 46b-129,[5] seeking to have himself

days prior to any actual transfer, unless written notice is waived by those entitled to receive it, or unless an emergency commitment of such child or youth is made pursuant to section 17a-502. . . ."

We note that § 17a-11 (a) was amended in 2009, however, the changes to the statute are not relevant to this appeal. See Public Acts 2009, No. 09-185, § 6. For purposes of convenience, we refer herein to the 2009 revision of the statute.

[4] After the first fire incident, Matthew was admitted to the Connecticut Children's Medical Center and thereafter was sent to Stony Lodge Hospital, a child and adolescent psychiatric facility in New York, for treatment. Following that treatment, Matthew was released to his family's care. According to the social study prepared by the department, prior to Matthew's release but before he set the second fire, Matthew's mother had contacted the department, sought voluntary services for him and expressed her fear that he would set another fire. The department supervisor informed the mother that Matthew did not meet the criteria for voluntary services because of the pending criminal charges relating to the March, 2007 fire.

[5] General Statutes § 46b-129 provides in relevant part: "(a) . . . [A] child or such child's representative or attorney . . . having information that a child or youth is neglected, uncared-for or dependent, may file with the Superior Court that has venue over such matter a verified petition plainly stating such facts as bring the child or youth within the jurisdiction of the court as neglected, uncared-for or dependent, within the meaning of section 46b-120, the name, date of birth, sex and residence of the child or youth, the name and residence of such child's parents or guardian, and praying for appropriate action by the court in conformity with the provisions of this chapter. . . .

"(j) Upon finding and adjudging that any child or youth is uncared-for, neglected or dependent, the court may commit such child or youth to the

adjudicated as an uncared-for youth. In connection with the petition, Matthew alleged that his home could not "provide the specialized care which the physical, mental or emotional condition of the child/youth requires," and sought an order of commitment to the department's care. Although Matthew's parents appeared in support of the petition, the trial court, *Olear, J.*, deferred adjudication of the matter until April 2, 2008, in order to obtain a social study from the department.

At the April 2 hearing, the department challenged the petition, contending, inter alia, that, because Matthew's commitment would expire in three days, as a matter of law, upon his eighteenth birthday, it was not possible to identify and place Matthew in an appropriate placement prior to the expiration of the commitment. The department further contended that Matthew's parents could seek voluntary services from the department of mental health and addiction services (department of

Commissioner of Children and Families. Such commitment shall remain in effect until further order of the court, except that such commitment may be revoked or parental rights terminated at any time by the court, or the court may vest such child's or youth's care and personal custody in any private or public agency that is permitted by law to care for neglected, uncared-for or dependent children or youths or with any other person or persons found to be suitable and worthy of such responsibility by the court. . . . The commissioner shall be the guardian of such child or youth for the duration of the commitment, provided the child or youth has not reached the age of eighteen years or, in the case of a child or youth in full-time attendance in a secondary school, a technical school, a college or a state-accredited job training program, provided such child or youth has not reached the age of twenty-one years, by consent of such youth, or until another guardian has been legally appointed, and in like manner, upon such vesting of the care of such child or youth, such other public or private agency or individual shall be the guardian of such child or youth until such child or youth has reached the age of eighteen years or, in the case of a child or youth in full-time attendance in a secondary school, a technical school, a college or a state-accredited job training program, until such child or youth has reached the age of twenty-one years or until another guardian has been legally appointed. . . ."

We note that technical changes, not relevant to this appeal, were made to § 46b-129 (j) in 2009. See Public Acts 2009, No. 09-185, § 3. For purposes of convenience, we refer herein to the 2009 revision of the statute.

mental health). At the conclusion of the hearing, the trial court, *Baldwin, J.*, adjudicated Matthew uncared for, committed him to the care of the department until further order of the court and ordered the department to facilitate his eventual transfer to the department of mental health.

On May 14, 2008, after he had turned eighteen, Matthew, through his attorney, filed in the Superior Court for Juvenile Matters: (1) a motion for continuation of court jurisdiction; and (2) a motion for emergency relief seeking an injunction barring the department from transferring Matthew to the department of mental health and an order compelling the department to comply with its obligations to provide him with an adequately supported placement. On May 19, 2008, the trial court granted the motion for emergency relief insofar as it enjoined the department from acting to change or alter the status quo until after the hearing that it had scheduled for May 28, 2008, and until further order of the court.

At the May 28 hearing, Matthew's attorney claimed that, pursuant to General Statutes § 17a-3,[6] Matthew

---

[6] General Statutes § 17a-3 (a) provides in relevant part: "The department shall plan, create, develop, operate or arrange for, administer and evaluate a comprehensive and integrated state-wide program of services, including preventive services, for children and youths whose behavior does not conform to the law or to acceptable community standards, or who are mentally ill, including deaf and hearing impaired children and youths who are mentally ill, emotionally disturbed, substance abusers, delinquent, abused, neglected or uncared for, including all children and youths who are or may be committed to it by any court, and all children and youths voluntarily admitted to, or remaining voluntarily under the supervision of, the commissioner for services of any kind. Services shall not be denied to any such child or youth solely because of other complicating or multiple disabilities. The department shall work in cooperation with other child-serving agencies and organizations to provide or arrange for preventive programs, including, but not limited to, teenage pregnancy and youth suicide prevention, for children and youths and their families. The program shall provide services and placements that are clinically indicated and appropriate to the needs of the child or youth. . . ."

had a statutory right to an appropriate placement. She contended that the department of mental health neither could provide such a placement, because Matthew needed a twenty-four hour placement with a training component to address his fire starting compulsions, nor would accept him without his first having obtained the benefits of that intervention. She further claimed that the department was obligated to provide services to Matthew pursuant to a memorandum of agreement between the department and the department of mental health, which provided, inter alia, that "[the department] will serve youth in its care (committed or voluntary) until age [twenty-one], provided that the client was in [the department's] care on his/her [eighteenth] birthday, remains in school or in a work training program, and is willing to accept [the department] services voluntarily." Finally, Matthew's attorney claimed that the department's failure to provide care violated the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the equal protection clauses of the state and federal constitutions. The department's position was that the Superior Court for Juvenile Matters had been divested of subject matter jurisdiction to grant equitable relief once Matthew had turned eighteen years of age.

In its September 5, 2008 memorandum of decision, the trial court rejected the department's jurisdictional argument, citing the fact that, *prior* to Matthew's eighteenth birthday, the court had entered its order directing the department to maintain the commitment until the provision of proper care was in place. With respect to the merits of the motions, the trial court issued the following order: "To clarify and implement the orders entered by this court on April 2, 2008, the court hereby orders [the department] to promptly secure an appropriate placement for [Matthew] designed to provide [twenty-four] hour supervisory care to [him] with the objective of complying with its obligation to meet the

requirements of its memorandum of agreement regarding client transfers to [the department of mental health] for continuing appropriate care and services to be provided by that agency."

On September 25, 2008, the department filed a motion to open and set aside the September 5 order in light of Matthew's anticipated placement, pursuant to pending proceedings in the criminal court, at Abraxas Youth Services (Abraxas), a secure treatment facility located in Pennsylvania that is dedicated to the treatment of fire starting behaviors.[7] The court granted the motion in part, vacating that part of its September 5 order that had required the department promptly to secure an appropriate placement for Matthew. The court left in place, however, that part of its order directing the department to meet the requirements of its memorandum of agreement with the department of mental health.

On October 14, 2008, in the criminal proceedings relating to the arson charges, which were pending in the criminal court, Matthew entered into a plea agreement under which he received a suspended sentence and was conditionally discharged as a youthful offender. As a condition of his release, the criminal court, *Alexander, J.*, ordered Matthew to enter into treatment at Abraxas. Accordingly, Matthew was released from Manson directly into the custody of Abraxas.

On March 13, 2009, Matthew's attorney filed in the trial court the motion for services that is the subject of the present appeal, seeking an order compelling the department to provide Matthew with a twenty-four hour

---

[7] The trial court found that Abraxas had reviewed Matthew's history and had concluded that its therapeutic intervention would be appropriate for him and likely would rehabilitate him over the course of its standard fifteen month program. Although Abraxas is not licensed by the department to provide services, the trial court found that the department had made no effort toward granting such approval.

placement and to discontinue any efforts to transfer him to the custody of the department of mental health. In effect, that motion sought to have the department pay for Matthew's treatment at Abraxas and to obligate the department to provide an appropriate placement upon his release from that facility. The department objected to the motion, claiming that the court had lost jurisdiction on the date of Matthew's eighteenth birthday. It further claimed that the department provides only *voluntary* services pursuant to § 17a-11 to persons after they attain the age of eighteen and that it has no obligation to provide Matthew with such services because he has a felony conviction.

In its May 21, 2009 decision granting the motion for services, the trial court chronicled in detail Matthew's troubled history, his parents' efforts to obtain assistance from the department, the department's failure to provide Matthew with appropriate services and the previous court orders vesting the department with certain responsibilities toward Matthew. In light of these facts, the court determined that it was appropriate to order the following relief.[8] First, the department would have a continuing obligation to monitor and support Matthew while he attended the program at Abraxas. Second, although the department would have no obligation to provide services from the department of mental health to Matthew during his residence at Abraxas, if Matthew successfully completed that treatment, the department would have a continuing obligation thereafter to provide necessary services, which might require the department of mental health's participation consistent with the agreement between the two agencies. Matthew would remain under the department's care, if he

---

[8] The trial court did not reach the merits of Matthew's allegations of violations by the department of, inter alia, the Americans with Disabilities Act and the state and federal constitutions for lack of written support or argument.

so chose, until the age of twenty-one, unless the department concluded that Matthew would not benefit from its continuing support and care. Third, the department was obligated to pay the expenses incurred in Matthew's treatment, beginning with his treatment at Abraxas and until he no longer was in the department's care, subject to any right of recoupment that the department might have from him or his parents.[9] As authority for ordering such relief, the trial court cited General Statutes §§ 17a-10 (a), 17a-11 (g) and 17a-15 (a).[10] The department's appeal from the trial court's order granting the motion for services followed.

On appeal, the department contends that: (1) because the jurisdiction of the Superior Court for Juvenile Matters is limited to adjudicating matters involving a child or youth, the trial court was divested of jurisdiction

---

[9] There is nothing in the record to indicate that Matthew made a request to the department of probation to pay the cost of his placement at Abraxas.

[10] General Statutes § 17a-10 (a) provides: "Any child committed to the department by the Superior Court shall be deemed to be within the custody of the commissioner until such commitment has been terminated."

General Statutes § 17a-11 (g) provides: "Notwithstanding any provision of sections 17a-1 to 17a-26, inclusive, and 17a-28 to 17a-49, inclusive, any person already under the care and supervision of the Commissioner of Children and Families who has passed such person's eighteenth birthday but has not yet reached such person's twenty-first birthday may be permitted to remain voluntarily under the supervision of the commissioner, provided the commissioner, in the commissioner's discretion, determines that such person would benefit from further care and support from the [department]. Any person remaining voluntarily under the supervision of the commissioner pursuant to this subsection shall be entitled to a written plan for care and treatment, and review of such plan, in accordance with section 17a-15."

General Statutes § 17a-15 (a) provides: "The commissioner shall prepare and maintain a written plan for care, treatment and permanent placement of every child and youth under the commissioner's supervision, which shall include but not be limited to a diagnosis of the problems of each child or youth, the proposed plan of treatment services and temporary placement and a goal for permanent placement of the child or youth, which may include reunification with the parent, long-term foster care, independent living, transfer of guardianship or adoption. The child's or youth's health and safety shall be the paramount concern in formulating the plan."

once Matthew turned eighteen; (2) neither § 17a-11, on which the trial court relied, nor § 46b-129 (j), on which the trial court did not rely[11] but which sets forth the procedures that follow commitment of a child or youth to the department's care, provides a jurisdictional basis and authority under the facts of this case to order the department to pay for services;[12] (3) sovereign immunity barred the court from ordering the department to pay monetary damages; and (4) various defects in the underlying proceedings violated the department's right to fundamental fairness. With respect to the department's jurisdictional arguments, Matthew and the respondent father contend that the department is not entitled to review of these claims because they are either untimely or moot. They further claim that, because Matthew was committed to the department's care before he was eighteen years old, the trial court properly exercised continuing jurisdiction. We conclude that, although Matthew's age was not a per se bar to the trial court's exercise of jurisdiction, in light of the facts presented to the trial

---

[11] Although the trial court did not rely on § 46b-129 (j) as a basis for the exercise of its jurisdiction, the department raised its potential impact in its brief to this court, claiming that this section could not afford jurisdiction in the present case. In response, Matthew and his father each briefed the applicability of § 46b-129 (j) to the jurisdictional question at hand, and that issue also was discussed extensively by both parties at oral argument before this court. Accordingly, even though Matthew and his father failed to raise this issue as an alternate ground for affirmance pursuant to Practice Book § 63-4 (a) (1) or to frame it explicitly as such, we may consider it because doing so will not prejudice the department. See *Connecticut Ins. Guaranty Assn.* v. *Fontaine*, 278 Conn. 779, 784 n.4, 900 A.2d 18 (2006); *Liscio* v. *Liscio*, 204 Conn. 502, 506 n.6, 528 A.2d 1143 (1987).

[12] We note that the department's brief to this court organizes its arguments relating to the statutes slightly differently than the way we have set them forth. Specifically, it first discusses why the trial court improperly relied on § 17a-11 (g) as a basis for jurisdiction and later addresses § 46b-129 as part of its argument that the Superior Court for Juvenile Matters was divested of jurisdiction once Matthew turned eighteen. Because we view the questions to be more properly framed as whether either statute provides a basis for jurisdiction, we address them together.

court, neither § 17a-11 nor § 46b-129 provided a basis for jurisdiction over the motion for services.[13]

I

Before turning to the department's jurisdictional claims, we dispose of the threshold issue raised by Matthew and his father as to whether the department is entitled to review of these claims. They contend that, although the department casts its appeal as arising from the May 21, 2009 order granting the motion for services, the department actually is challenging the April 2, 2008 order committing Matthew to the care of the department. Matthew and his father therefore contend that this appeal is untimely.[14] They further contend that, because this court cannot afford the department the relief it seeks, which they characterize as seeking to void the department's obligation to Matthew once he was committed to its care, the appeal is moot. We disagree.

It is clear that the department has not challenged the trial court's jurisdiction to enter the original order of commitment. As we previously have noted, the court's April, 2008 order committed Matthew to the care of the department and, in essence, ordered the department to

---

[13] Because we conclude that the trial court improperly exercised jurisdiction over this matter, we need not address the department's remaining claims concerning purported violations of sovereign immunity and fundamental fairness.

[14] Matthew also contends that subject matter jurisdiction never was raised or challenged in connection with his March 13, 2009 motion for services, the order that is the subject of this appeal. We note, however, that the conclusion of the department's objection to this motion specifically provides: "Because the [d]epartment complied with this [c]ourt's orders and the Superior Court for Juvenile Matters no longer has subject matter jurisdiction over this case, and has no basis to regain it, the [department] respectfully requests that this court deny the [m]otion for [s]ervices." Although the trial court did not expressly address this issue, "a claim that a court lacks subject matter jurisdiction to hear a case . . . may be raised at any time." *MBNA America Bank, N.A.* v. *Boata*, 283 Conn. 381, 390, 926 A.2d 1035 (2007).

facilitate a referral to the department of mental health. Indeed, the trial court stated that it expected the department's role "will be short-lived." Although the court's September 5, 2008 memorandum of decision in response to Matthew's motion for continuing jurisdiction and for emergency relief had ordered the department "to promptly secure an appropriate placement for [Matthew] designed to provide [twenty-four] hour supervisory care to [him]," that portion of the decision thereafter was vacated by the court on September 25, 2008. Accordingly, the only standing obligation imposed on the department was to facilitate Matthew's transfer to the department of mental health "for continuing appropriate care and services to be provided by *that* agency." (Emphasis added.)

On appeal, the department challenges whether the trial court had jurisdiction to impose an obligation on the department to provide *and pay for* Matthew's placement from the age of eighteen until the age of twenty-one, including the treatment at Abraxas. That obligation was fixed only after the court's May 21, 2009 order on the motion for services. Therefore, the department's appeal is not untimely. For similar reasons, the appeal also is not moot, as a decision in the department's favor would relieve it of that obligation. See *In re Jorden R.*, 293 Conn. 539, 556, 979 A.2d 469 (2009) ("[i]n determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way" [internal quotation marks omitted]).

## II

We therefore turn to whether the trial court properly exercised jurisdiction in the present case. The department makes two interrelated claims: (1) that the Superior Court for Juvenile Matters was divested of jurisdiction once Matthew turned eighteen because "juvenile matters" only include matters pertaining to

individuals under the age of eighteen; and (2) that neither § 17a-11 nor § 46b-129 provided the court with a statutory basis for jurisdiction to order the department to provide services to persons beyond the age of eighteen. We conclude that, although the jurisdiction of the Superior Court for Juvenile Matters does not necessarily cease when a youth committed to the department turns eighteen, in the present case, the trial court did not have jurisdiction because Matthew neither alleged nor established the requirements of either statutory provision.

Before turning to the merits of this appeal, we note the settled principles that guide our review. "[A] determination regarding a trial court's subject matter jurisdiction is a question of law, [and therefore] our review is plenary." (Internal quotation marks omitted.) *Sastrom* v. *Psychiatric Security Review Board*, 291 Conn. 307, 314, 968 A.2d 396 (2009). Moreover, our analysis of the court's jurisdiction in the current case requires us to examine the scope and effect of several statutory schemes. In making such determinations, we are guided by fundamental principles of statutory construction. See General Statutes § 1-2z;[15] *Testa* v. *Geressy*, 286 Conn. 291, 308, 943 A.2d 1075 (2008) ("[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature" [internal quotation marks omitted]).

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy pre-

---

[15] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

None of the parties claims that the relevant statutes are clear and unambiguous, and we independently conclude that they are not so. Accordingly, we may examine extratextual sources to determine the meaning of the statutes.

sented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Sastrom* v. *Psychiatric Security Review Board*, supra, 291 Conn. 314–15. "Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute. *Bailey* v. *Mars*, 138 Conn. 593, 601, 87 A.2d 388 (1952)." (Internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 728, 724 A.2d 1084 (1999). Moreover, "[a]lthough it is a critical prerequisite to any court's involvement in a case, we repeatedly have held that, when 'a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged.' *Demar* v. *Open Space & Conservation Commission*, 211 Conn. 416, 425, 559 A.2d 1103 (1989); see also *Seebeck* v. *State*, 246 Conn. 514, 533, 717 A.2d 1161 (1998) (noting 'the long recognized presumption in favor of appellate jurisdiction')." *In re Judicial Inquiry No. 2005-02*, 293 Conn. 247, 254, 977 A.2d 166 (2009).

A

We first turn to the department's claim that the trial court was divested of jurisdiction when Matthew turned eighteen because, at that point in time, the case ceased to be a "juvenile matter." In essence, the department relies on the provision defining juvenile matters; see General Statutes § 46b-121 (a);[16] as setting the limits

---

[16] General Statutes § 46b-121 (a) provides in relevant part: "Juvenile matters in the civil session include all proceedings concerning uncared-for, neglected or dependent children and youths within this state, termination of parental rights of children committed to a state agency, matters concerning families with service needs, contested matters involving termination of parental rights or removal of guardian transferred from the Probate Court, the emancipation of minors and youths in crisis, but does not include matters

of the court's jurisdiction. Specifically, the department emphasizes that this provision addresses proceedings relating to the care and custody of a "child" or "youth," who by definition are under the age of eighteen. See General Statutes § 46b-120 (1) and (2). We disagree with the department that this delineation is jurisdictional.

Resolution of this claim largely is explained by an examination of the history of the statutory scheme that governs the operation of the Superior Court for Juvenile Matters. Although at one time, the Juvenile Court was a separate and independent court, "[i]n 1978, the General Assembly enacted General Statutes § 51-164s, which merged the Juvenile Court and the Superior Court in order to maximize the efficiency of scarce judicial resources. Under § 51-164s, '[t]he [S]uperior [C]ourt shall be the sole court of original jurisdiction for *all causes of action*, except such actions over which the courts of probate have original jurisdiction, as provided by statute. All jurisdiction heretofore conferred upon and exercised by the [C]ourt of [C]ommon [P]leas and the [J]uvenile [C]ourt prior to July 1, 1978 shall be transferred to the [S]uperior [C]ourt on July 1, 1978.' By this enactment, the legislature vested in the Superior Court the jurisdiction that had until then resided in the Juvenile Court. All juvenile matters now come under the administrative umbrella of the family division of the Superior Court." (Emphasis added.) *State* v. *Kelley*, 206 Conn. 323, 328, 537 A.2d 483 (1988); see also *State* v. *Ledbetter*, 263 Conn. 1, 4 n.9, 818 A.2d 1 (2003) ("This state has a unified court system. Thus, all criminal and

of guardianship and adoption or matters affecting property rights of any child, youth or youth in crisis over which the Probate Court has jurisdiction, provided appeals from probate concerning adoption, termination of parental rights and removal of a parent as guardian shall be included. . . ."

This statute was revised effective January 1, 2010, but those revisions are not relevant to the issue in the present case. See Public Acts, Spec. Sess., June, 2007, No. 07-4, § 74. For purposes of convenience, we refer herein to the 2009 revision of the statute.

civil matters, including juvenile matters, fall within the subject matter jurisdiction of the Superior Court.").

As a result of this merger, "we have concluded that the issue of juvenile 'jurisdiction' is not a question of subject matter jurisdiction, but rather more a question of venue." *State* v. *Angel C.*, 245 Conn. 93, 108 n.17, 715 A.2d 652 (1998); accord *State* v. *Kelley*, supra, 206 Conn. 329 ("[r]ather than implicating subject matter jurisdiction, issues relating to transfers between the juvenile and the regular criminal docket involve considerations that are analogous to those of the law of venue"). "While jurisdiction is the power and authority of the court to act, venue is the place where the power to adjudicate is to be exercised, that is, the place where the suit may or should be heard. The requirements of jurisdiction are grounded in the state's inherent judicial power, while the requirements of venue are grounded in convenience to litigants. Venue does not involve a jurisdictional question but rather a procedural one, and thus is a matter that goes to process rather than substantive rights." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *New London*, 282 Conn. 791, 814, 925 A.2d 292 (2007).

Although this court has recognized these broad principles, it has not applied them to the precise question before us in the present case, namely, the limits of the jurisdiction of the Superior Court for Juvenile Matters after a youth committed to the department's care has turned eighteen. In reliance on the aforementioned principles, however, the Appellate Court has answered that question in favor of jurisdiction in a case raising a similar issue. In *In re Shonna K.*, 77 Conn. App. 246, 255, 822 A.2d 1009 (2003), that court rejected the commissioner of children and families' contention that the Superior Court for Juvenile Matters lacked jurisdiction to enforce an agreement to provide an appropriate placement to a youth committed to the department's

care, executed between that youth and the department before she had turned eighteen, after that youth had turned eighteen. The Appellate Court explained: "[T]he language [of § 51-146s] . . . expressly confers to the Superior Court all jurisdiction that previously had been held by the Juvenile Court. Furthermore, [General Statutes] § 51-164t, which authorizes the Superior Court to be separated into divisions, in part to maximize efficiency and to provide the highest standard of justice, makes no mention of splitting jurisdiction among the various divisions. The chief court administrator is authorized to assign to each division as many judges as deemed advisable in the best interest of court business. . . . In those statutes, there is no indication that the legislature intended that the Juvenile Matters session would have a separate and distinct jurisdiction from that of the Superior Court.

"Our review of the legislative history of § 51-164s similarly reveals that the goal of the legislature was 'to combine the trial jurisdiction which is now spread between the Superior Court, the Court of Common Pleas and the Juvenile Court into one [c]ourt . . . the Superior Court.' 19 H.R. Proc., Pt. 7, 1976 Sess., p. 2862, remarks of Representative James T. Healey. This combination would result in the 'more effective utilization of available manpower.' Id., p. 2863. 'Although the bill provides for divisions, it in no way inhibits or limits the jurisdictional power of each of the [j]udges, and, therefore, if he ran out of one particular grouping of business, he could then shift gears into another group.' 19 H.R. Proc., Pt. 8, 1976 Sess., p. 3259, remarks of Representative Healey. Senator David H. Neiditz summarized the legislation by stating: '[T]he thrust of this bill, the reason for this bill, is to provide for the unification, simplification, flexibility and effective responsible control of the administration of the court of the [s]tate of Connecticut. . . . The main defect of the present

system is the waste of judicial personnel . . . . This waste is caused by ill-defined jurisdictional lines causing duplication of efforts. Piecemeal handling of single controversies simultaneously in different courts compounds the problem.' 19 S. Proc., Pt. 7, 1976 Sess., p. 2652, remarks of Senator Neiditz. . . .

"We conclude, on the basis of our review of the case law, applicable statutes and legislative history, that subject matter jurisdiction over juvenile cases in the Superior Court for Juvenile Matters . . . is not separate and distinct from the general subject matter jurisdiction of the Superior Court. . . . Instead, the question of whether the Superior Court for Juvenile Matters was the proper forum was one of venue. See *State* v. *Kelley*, supra, 206 Conn. 332." (Citation omitted.) *In re Shonna K.*, supra, 77 Conn. App. 254–56.

Although the department attempts to distinguish *In re Shonna K.* from the present case by virtue of the fact that there was an underlying agreement that had provided the basis for jurisdiction over the case, we disagree that this factual distinction bears on the question of whether, *as long as there is some proper jurisdictional basis for the subject matter of the action*, the mere age of the party seeking relief divests the Superior Court for Juvenile Matters of jurisdiction. We find the Appellate Court's thorough reasoning in *In re Shonna K* rejecting such a proposition to be persuasive. Therefore, on the basis of the examination of the text and legislative history of the relevant statutory scheme by both this court in *Kelley* and the Appellate Court in *In re Shonna K.*, we conclude that the trial court did not lose jurisdiction merely because Matthew had turned eighteen. Although, as an administrative matter, the Superior Court for Juvenile Matters ordinarily does not entertain matters concerning persons beyond the age of eighteen; *State* v. *Kelley*, supra, 206 Conn. 328–29; these precedents indicate that it enjoys the same

breadth of *jurisdiction* as *any* session of the Superior Court.

## B

Having concluded that the Superior Court for Juvenile Matters is not divested of jurisdiction merely because the party seeking relief has turned eighteen, we must nonetheless determine whether the trial court had a proper statutory[17] basis on which to exercise jurisdiction to issue the contested order in the present case. The department contends that the statutory basis on which the trial court claimed to exercise jurisdiction, § 17a-11 (g), was not proper because that section simply vests the commissioner of children and families (commissioner) with *discretion* to provide *voluntary* services. It further contends that, although § 46b-129 (j) addresses circumstances under which the department may provide services to persons age eighteen to twenty-one who were committed to its care prior to their eighteenth birthday, that provision simply acknowledges the department's authority and not the court's jurisdiction. We agree with the department's first contention, but disagree with its claim, as a general matter, regarding § 46b-129 (j).

"Subject matter jurisdiction involves the authority of a court to adjudicate the *type of controversy* presented by the action before it." (Emphasis added; internal quotation marks omitted.) *Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 386, 973 A.2d 1229 (2009); see also *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 4, 675 A.2d 845 (1996) ("Jurisdiction of the subject-matter is the power

---

[17] Although a trial court's basis for jurisdiction may derive from constitutional, common-law or statutory sources; see, e.g., *State* v. *Parker*, 295 Conn. 825, 834, 992 A.2d 1103 (2010) ("The Superior Court is a constitutional court of general jurisdiction. . . . In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law." [Internal quotation marks omitted.]); Matthew and his father claim only that the statutory scheme governing the department creates jurisdiction.

[of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy." [Internal quotation marks omitted.]). Similarly, this court has long recognized that the Superior Court "has jurisdiction of all matters expressly committed to it and all others cognizable by any law court of which the exclusive jurisdiction is not given to some other court. The fact that no other court has exclusive jurisdiction in any matter is sufficient to give the Superior Court jurisdiction over that matter." (Internal quotation marks omitted.) *In re Joshua S.*, 260 Conn. 182, 215, 796 A.2d 1141 (2002); see General Statutes § 51-164s ("[t]he Superior Court shall be the sole court of original jurisdiction for all causes of action, except such actions over which the courts of probate have original jurisdiction, as provided by statute"). Accordingly, whether a division of the Superior Court, such as the Superior Court for Juvenile Matters, can exercise jurisdiction depends upon whether there exists a valid and cognizable cause of action, or matter, over which jurisdiction has not been vested in some other court.

We therefore turn to the relevant statutory framework. Pursuant to § 17a-10 (a), "[a]ny child committed to the department by the Superior Court shall be deemed to be within the custody of the commissioner until such commitment has been terminated." Section 46b-121 (b) (1) provides the Superior Court for Juvenile Matters with, inter alia, the "authority to make and enforce such orders . . . as the court deems necessary or appropriate to secure the welfare, protection, proper care and suitable support of a child or youth subject to the court's jurisdiction or otherwise committed to or in the custody of the [commissioner]. . . ." These provisions indicate that the Superior Court for Juvenile Matters retains jurisdiction over any individual it has

committed to the department as long as that commitment is in effect.

Sections 17a-11 and 46b-129 provide two different statutory avenues by which a child or youth may come within the care or commitment of the department and thereafter may obtain services after the age of eighteen. See *In re Darien S.*, 82 Conn. App. 169, 176, 842 A.2d 1177 ("the legislature has implemented a permanency planning process for all children in its custody, including those who are admitted voluntarily; General Statutes § 17a-11 [d] . . . [or] adjudicated as neglected or dependent; General Statutes § 46b-129 [k]"), cert. denied, 269 Conn. 904, 852 A.2d 733 (2004). Section 17a-11 provides for voluntary services and vests the commissioner with discretion to admit to the department on a voluntary basis any child or youth who can benefit from the department's services. General Statutes § 17a-11 (a). This statute further provides that "any person already under the care and supervision of the [commissioner pursuant to § 17a-11 (a)] who has passed such person's eighteenth birthday but has not yet reached such person's twenty-first birthday may be permitted to remain voluntarily under the supervision of the commissioner, provided the commissioner, *in the commissioner's discretion*, determines that such person would benefit from further care and support from the [department]." (Emphasis added.) General Statutes § 17a-11 (g). Although the trial court cited to § 17a-11 as the basis for its jurisdiction to compel the department to pay for and provide services, Matthew and his father properly have conceded that this section is inapplicable in the present case because Matthew was never admitted to the department through the voluntary services program. Indeed, the department rejected such a request from Matthew's parents prior to Matthew's eighteenth birthday; see footnote 4 of this opinion; and Matthew's father concedes that they did not pursue the

administrative remedy available by statute upon such a denial. See General Statutes § 17a-11 (f).

Instead, Matthew was committed to the department as an uncared-for youth pursuant to § 46b-129. We therefore focus our inquiry on whether that statute provided a basis for the trial court's jurisdiction in this case. That section provides in relevant part: "Upon finding and adjudging that any child or youth is uncared-for, neglected or dependent, the court may commit such child or youth to the [commissioner]. Such commitment shall remain in effect *until further order of the court . . . . The commissioner shall be the guardian of such child or youth for the duration of the commitment, provided* the child or youth has not reached the age of eighteen years or, *in the case of a child or youth in full-time attendance in a secondary school, a technical school, a college or a state-accredited job training program, provided such child or youth has not reached the age of twenty-one years, by consent of such youth . . . .*" (Emphasis added.) General Statutes § 46b-129 (j).

The language of § 46b-129 (j), especially the use of the terms commitment and guardianship, referring both to youths younger than eighteen and individuals older than eighteen who meet the other statutory requirements, strongly indicates that a youth's commitment to the department may continue beyond the age of eighteen. Our review of the legislative history of § 46b-129 (j) further supports this interpretation. The language concerning committed youths beyond the age of eighteen was added in 1973 in order to correct an unintended effect of the majority age bill passed the previous year. 16 H.R. Proc., Pt. 14, 1973 Sess., p. 7124, remarks of Representative Joseph S. Coatsworth. That bill, which had lowered the age of majority from twenty-one to eighteen, also had removed "the provision in the statutes which allow[ed] for orphans and wards of the

state and other dependent children in Connecticut . . . to at least finish high school or if they were in college, continue in college until the age of twenty-one." Id. The legislature therefore passed the bill and amended § 46b-129 (j) to allow individuals between the ages of eighteen and twenty-one who are enrolled in one of the specified educational or vocational institutions to continue to receive support from the state. Id., p. 7152; see Public Acts 1973, No. 73-625, § 3.

The department contends that despite the language of § 46b-129 (j), the Superior Court for Juvenile Matters is divested of jurisdiction when a committed youth turns eighteen because at that time he or she becomes an adult, and the department's guardianship therefore ends. The department also makes a related claim that, although § 46b-129 (j) mandates the provision of services to persons beyond the age of eighteen who qualify under the statute, it merely is a grant of *authority* to the *department* to provide such services and does not confer *jurisdiction* on the court to compel the department to provide such services. In support of these claims, the department suggests that the proper means for enforcing the department's financial obligation is to challenge the department's actions in an administrative hearing.

As we previously have stated, the language of § 46b-129 (j) contradicts the department's first contention, and it has pointed to nothing in the text of that statute that supports its second claim. Moreover, as to the first claim, it is true that, once a youth becomes an adult, he or she must consent to continued commitment to the department. General Statutes § 46b-129 (j). This does not, however, alter the department's *obligation* to individuals beyond the age of eighteen who elect to remain in its custody. Regarding the second claim, the department fails to explain why, even if we were to assume, arguendo, that its relationship to a youth who

turns eighteen is limited to providing financial assistance, such an obligation would not provide a jurisdictional basis in the Superior Court for Juvenile Matters. Unlike § 17a-11, which explicitly provides that "[a]ny person aggrieved by a decision of the commissioner denying voluntary services may appeal such decision through an administrative hearing held pursuant to chapter 54"; General Statutes § 17a-11 (f); nothing in § 46b-129 requires persons aggrieved under that section to exhaust administrative remedies. Accordingly, in light of the well established presumption in favor of subject matter jurisdiction; *In re Judicial Inquiry No. 2005-02*, supra, 293 Conn. 254; we conclude, that, under the conditions set forth pursuant to § 46b-129 (j), the Superior Court for Juvenile Matters may exercise jurisdiction after a committed youth has turned eighteen.[18]

This conclusion, however, does not end our inquiry, because we must determine whether § 46b-129 (j) provided a basis for jurisdiction in the present case.[19] That

---

[18] Because, for reasons set forth subsequently in this opinion, we conclude that the Superior Court for Juvenile Matters did not have jurisdiction over Matthew's petition, we do not address the scope of that court's remedial authority under § 46b-129 (j). Accordingly, we need not address the department's claim that, because this statute allows financial recovery against the department, it is essentially a statute in derogation of sovereign immunity and thus must be construed narrowly.

[19] Although we conclude that the trial court lacked *jurisdiction* over Matthew's petition, we acknowledge that there exists a line of cases that suggests that the question before us should be framed as whether the trial court had the *authority* to decide this case. See, e.g., *Amodio* v. *Amodio*, supra, 247 Conn. 728; *Gurliacci* v. *Mayer*, 218 Conn. 531, 545, 590 A.2d 914 (1991). The discrepancy between those cases and the cases we follow, holding that the question is jurisdictional; see, e.g., *Bayer* v. *Showmotion, Inc.*, supra, 292 Conn. 386; *Figueroa* v. *C & S Ball Bearing*, supra, 237 Conn. 4; is troubling. Nonetheless, the present case is not the proper occasion to reconcile this discrepancy because neither party primarily frames its claims as implicating the *authority* of the Superior Court. Moreover, the peculiar procedural posture of the present case, particularly the fact that neither Matthew nor his father initially framed the underlying cause of action as arising under § 46b-129 (j), convinces us that our analysis is best focused on the jurisdictional inquiry.

section applies to individuals beyond the age of eighteen only when they have been committed to the department's care prior to the age of eighteen *and*, once attaining the age of eighteen, are enrolled full-time in secondary school, technical school, college or a state-accredited job training program. General Statutes § 46b-129 (j). With respect to that issue, Matthew has made an assertion in his brief to this court that he was a full-time special education student who continued taking classes prior to, during and following his release from incarceration, and therefore was qualified to receive assistance under § 46b-129 (j). Significantly, however, he neither alleged nor offered evidence to the trial court of that fact generally or of the specific jurisdictional fact that he was enrolled in any one of the institutions specified under the statute. It is well established that unsupported representations of counsel do not constitute evidence.[20] *State* v. *Santangelo*, 205 Conn. 578, 585, 534 A.2d 1175 (1987). Indeed, Matthew's counsel conceded at oral argument that the trial court had made no finding of facts concerning Matthew's enrollment in any such institution. We therefore conclude that Matthew failed to establish the factual predicate required for jurisdiction under § 46b-129 (j), and, accordingly, the trial court lacked jurisdiction over the matter. Cf. *State* v. *Sunrise Herbal Remedies, Inc.*, 296 Conn. 556, 576, 2 A.3d 843 (2010) (concluding that trial court had jurisdiction over matter because state met statutory requirements for cause of action).

---

[20] Matthew also claims that the department was bound to provide him with services by virtue of its memorandum of agreement with the department of mental health. Matthew does not, however, provide any reasoning or support for this assertion, or any explanation for how it would impact our analysis of the jurisdictional question. We therefore decline to review it. See, e.g., *Woodrow Wilson of Middletown, LLC* v. *Connecticut Housing Finance Authority*, 294 Conn. 639, 643 n.4, 986 A.2d 271 (2010) ("[T]he plaintiff does little more than provide this conclusory assertion with regard to this claim. Therefore, this claim has been inadequately briefed and we decline to address it.").

The decision is reversed and the case is remanded with direction to dismiss the petitioner's motion for services.

In this opinion NORCOTT, VERTEFEUILLE and ZARELLA, Js., concurred.

ROGERS, C. J., with whom PALMER, J., joins, concurring. The majority concludes that the trial court lacked jurisdiction over the claim of the petitioner, Matthew F., that he was entitled to an order compelling the department of children and families (department), to provide him with services because he was over the age of eighteen and had failed to allege that he was "in full-time attendance in a secondary school, a technical school, a college or a state-accredited job training program" as required by General Statutes § 46b-129 (j).[1] I

[1] General Statutes § 46b-129 provides in relevant part: "(a) . . . [A] child or such child's representative or attorney or a foster parent of a child, having information that a child or youth is neglected, uncared-for or dependent, may file with the Superior Court that has venue over such matter a verified petition plainly stating such facts as bring the child or youth within the jurisdiction of the court as neglected, uncared-for or dependent, within the meaning of section 46b-120, the name, date of birth, sex and residence of the child or youth, the name and residence of such child's parents or guardian, and praying for appropriate action by the court in conformity with the provisions of this chapter. . . .

"(j) Upon finding and adjudging that any child or youth is uncared-for, neglected or dependent, the court may commit such child or youth to the Commissioner of Children and Families. Such commitment shall remain in effect until further order of the court, except that such commitment may be revoked or parental rights terminated at any time by the court, or the court may vest such child's or youth's care and personal custody in any private or public agency that is permitted by law to care for neglected, uncared-for or dependent children or youths or with any other person or persons found to be suitable and worthy of such responsibility by the court. . . . The commissioner shall be the guardian of such child or youth for the duration of the commitment, provided the child or youth has not reached the age of eighteen years or, in the case of a child or youth in full-time attendance in a secondary school, a technical school, a college or a state-accredited job training program, provided such child or youth has not reached the age of twenty-one years, by consent of such youth, or until another guardian has been legally appointed. . . ."

would conclude that the petitioner's failure to make such an allegation was not a subject matter jurisdictional defect, but went to the merits of the petitioner's claim. Accordingly, I would reverse the judgment of the trial court on the ground that the petitioner had failed to establish an essential element of § 46b-129.[2]

This court previously has recognized "the recurrent difficulty of distinguishing between two kinds of challenges to a tribunal's exercise of its statutory authority. On the one hand, a challenge may allege that a tribunal's action exceeds its statutory authority. Such a challenge raises a jurisdictional claim. On the other hand, a challenge may allege that a tribunal's action misconstrues its statutory authority. Such a challenge raises a claim of statutory construction that is not jurisdictional." *Cantoni* v. *Xerox Corp.*, 251 Conn. 153, 162, 740 A.2d 796 (1999). Thus, "[a]lthough related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 728, 724 A.2d 1084 (1999).

As this court suggested in *Cantoni*, the distinction between challenges to the trial court's subject matter jurisdiction and challenges to the exercise of its statutory authority is not always clear. As a result, this court's cases addressing the distinction have not always been consistent. In *Amodio*, for example, the parties had entered into a child support agreement that precluded

---

[2] I concur with the majority's conclusions that: (1) the trial court was not deprived of jurisdiction over this matter merely because the petitioner reached the age of eighteen; and (2) General Statutes § 17a-11 (g) does not apply to this case because the petitioner was never committed to the care of the department through the voluntary services program.

modification unless the defendant earned more than $900 per week. Id., 727. The agreement was approved as an order of the trial court. Id., 726. When the defendant sought a modification order pursuant to General Statutes § 46b-86 (a), the trial court granted the modification even though the defendant's weekly income did not exceed $900. Id. On appeal, the Appellate Court determined, sua sponte, that the trial court did not have jurisdiction to modify the support order because the dissolution decree foreclosed such a modification. Id., 727. On appeal, this court concluded that "[a] court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action." (Citation omitted; internal quotation marks omitted.) Id., 728. This court noted that § 46b-86 (a) confers jurisdiction on the trial court to modify support orders "[u]nless and to the extent that the decree precludes modification"; (internal quotation marks omitted) id., 730; but concluded that, because support orders can be modified despite such preclusion provisions when they are ambiguous or do not adequately protect the parties, the trial court did not lack subject matter jurisdiction to modify the order. Id., 730–31. This court further concluded that "[s]eparate and distinct from the question of whether a court has jurisdictional power to hear and determine a support matter . . . is the question of whether a trial court *properly* applies § 46b-86 (a), that is, properly exercises its statutory authority to act." (Emphasis in original.) Id., 730. This court remanded the case to the Appellate Court for consideration of that issue. Id., 732; see also *New England Retail Properties, Inc.* v. *Maturo*, 102 Conn. App. 476, 482, 925 A.2d 1151 (under statute prohibiting commencement of

action against estate unless legal claim has been rejected by estate, claim that estate had not rejected legal claim did not implicate court's subject matter jurisdiction but was question of statutory authority), cert. denied, 284 Conn. 912, 931 A.2d 932 (2007).

In *Kennedy* v. *Kennedy*, 177 Conn. 47, 49, 411 A.2d 25 (1979), this court reached a different result. The issue in that case was whether "the Superior Court has the authority to make and enforce support orders pertaining to children over the age of eighteen." Id. The court concluded that, because the statutes relating to support orders applied only to minor children, and because the legislature had lowered the age of majority from twenty-one years of age to eighteen years of age, the trial court lacked jurisdiction to enter such orders.[3] Id., 52–53. In *Kennedy*, the court did not discuss the distinction between the trial court's subject matter jurisdiction and its statutory authority. In a later case, however, Justice Peters, who was on the panel that decided *Kennedy*, stated that she was "not persuaded that we should invariably characterize as an absence of subject matter jurisdiction every failure of a trial court to observe every statutory limitation on its authority to act; but it is clear that in this instance I am bound by our holding to the contrary" in *Kennedy*. *Broaca* v. *Broaca*, 181 Conn. 463, 471, 435 A.2d 1016 (1980) (*Peters, J.*, dissenting).

This court's cases addressing the distinction between motions to dismiss and motions to strike are also instructive on the distinction between claims implicating the trial court's subject matter jurisdiction and claims implicating the proper exercise of its authority.

---

[3] See also *State* v. *Welwood*, 258 Conn. 425, 435, 780 A.2d 924 (2001) (relying on *Kennedy* to support conclusion that trial court lacked jurisdiction to require defendant to enter into agreement that he would have no contact with victims until they reached age of twenty-one when period of agreement extended beyond maximum period of probation allowed by statute).

In *Gurliacci* v. *Mayer*, 218 Conn. 531, 541–42, 590 A.2d 914 (1991), this court considered whether the trial court had subject matter jurisdiction over the plaintiff's claim that she had been injured as the result of a fellow employee's negligence. The named defendant in that case argued that the trial court lacked subject matter jurisdiction over the action because, under the fellow employee immunity rule of General Statutes (Rev. to 1983) § 7-465 and the Workers Compensation Act, General Statutes § 31-275 et seq., the workers' compensation commission has exclusive jurisdiction over intra-workplace claims unless they fall into one of two statutory exceptions. Id., 543–44. Because the plaintiff had not alleged either exception in her complaint, the defendant filed a motion to dismiss the complaint for lack of subject matter jurisdiction, which the trial court denied. Id., 541–42. On appeal, this court noted that it previously had held that "if a pleading . . . on its face is legally insufficient, although facts may indeed exist which, if properly pleaded, would establish a cause of action upon which relief could be granted, a motion to strike is required." (Internal quotation marks omitted.) Id., 544. In contrast, "[a] motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Internal quotation marks omitted.) Id. This court concluded that "the fact that the plaintiff's complaint failed to allege facts that would have removed it from the operation of the fellow employee immunity rule merely reflects that the complaint failed to state a legally sufficient cause of action." Id. Accordingly, this court concluded that the complaint properly was subject to a motion to strike, not a motion to dismiss. Id.

This court reasoned in *Gurliacci* that "[i]nterpreting the [statutory] language . . . [setting forth the excep-

tions to the fellow employee immunity rule] as subject matter jurisdictional, taken to its logical conclusion, would require a trial court, after trial, to dismiss for lack of subject matter jurisdiction a complaint that at the outset properly alleged an exception to the fellow employee immunity rule" if the fact finder ultimately concluded that neither exception applied. Id. "Thus, the court would be compelled to conclude that it had no subject matter jurisdiction over the case that it had tried solely because the plaintiff failed to establish an essential element of his cause of action." Id., 545. This court declined "to adopt such a bizarre interpretation of [the statute]." Id.; see also *Egri* v. *Foisie*, 83 Conn. App. 243, 246–51, 848 A.2d 1266 (trial court improperly granted motion to dismiss complaint under doctrine of sovereign immunity when plaintiff failed to allege negligent operation of state owned and insured motor vehicle as required by statute waiving sovereign immunity; because plaintiff could potentially state claim under statute, motion to strike was proper procedural vehicle for challenging legal sufficiency of complaint), cert. denied, 271 Conn. 931, 859 A.2d 930 (2004).[4]

This court reached a different conclusion in *Amore* v. *Frankel*, 228 Conn. 358, 362, 636 A.2d 786 (1994), in which the plaintiffs sought to recover from the defendant, the commissioner of transportation (commissioner), for injuries that one of the plaintiffs had sustained in a fall on a driveway on the campus of the University of Connecticut. The plaintiffs alleged that their claims came within a statutory exception to the doctrine of sovereign immunity for injuries that are caused by the commissioner's negligence in carrying

---

[4] The court in *Egri* v. *Foisie*, supra, 83 Conn. 247, stated that "[t]here is a significant difference between asserting that a plaintiff cannot state a cause of action and asserting that a plaintiff has not stated a cause of action, and therein lies the distinction between the motion to dismiss and the motion to strike."

out his legal duty to maintain a road. Id., 363–64. The commissioner filed a motion to dismiss the complaint in which he argued that the claim did not fall within the exception because he did not have the legal duty to maintain the roads on the university campus. Id., 362. In support of his motion, he submitted two supporting affidavits. Id., 362–63. The trial court granted the motion to dismiss. Id., 363. On appeal, the Appellate Court reversed the judgment. Id. On appeal to this court, this court concluded that "[t]he factual underpinnings of the allegations in the affidavits were sufficient to defeat any presumption of truth in the . . . assertion of a legal obligation on the part of the commissioner to maintain the driveway." Id., 368. It further concluded that, because the plaintiffs had not disputed the facts contained in the affidavit, the trial court lacked jurisdiction and had properly dismissed the complaint. Id., 369.

This court in *Amore* distinguished *Gurliacci*, on the ground that the motion to dismiss in that case had not been "accompanied by supporting affidavits that demonstrated by uncontroverted facts that the plaintiff could not as a matter of law and fact state a cause of action that should be heard by the court." Id., 367 n.8.[5] In his dissenting opinion in *Amore*, Justice Berdon disagreed with the majority's conclusion that *Gurliacci* was distinguishable and stated that "[t]he question here is not whether the commissioner had the responsibility to maintain the drive that would make him liable for defects, but whether the trial court has the power to hear and determine an action brought against him pursuant to [General Statutes] § 13a-144. And, of course, the answer is yes." Id., 373. Justice Berdon argued that,

[5] The court in *Amore* did not address the reasoning of the court in *Gurliacci* that treating the failure to allege an element of a claim as subject matter jurisdictional leads to the bizarre result that the trial courts would be required to dismiss claims after trial when they find that an element of the claim had not been proven.

because the failure to allege that the commissioner had a legal duty to maintain the road at issue merely affected the legal sufficiency of the complaint, the validity of the complaint should have been tested by way of a motion to strike. Id., 372–73.

As I have indicated, there does not seem to be any consistent general principle underlying these cases. For the following reasons, I believe that, to the extent that these cases are inconstant, the better rule is set forth in *Gurliacci*. First, the holding of *Gurliacci* that the failure to allege an essential fact does not deprive the trial court of subject matter jurisdiction is consistent with the rule that "every presumption is to be indulged in favor of jurisdiction." (Internal quotation marks omitted.) *Gurliacci* v. *Mayer*, supra, 218 Conn. 543; see also *Amodio* v. *Amodio*, supra, 247 Conn. 728 ("A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action." [Citation omitted; internal quotation marks omitted.]); *Carten* v. *Carten*, 153 Conn. 603, 612–13, 219 A.2d 711 (1966) ("The Superior Court is a court of general jurisdiction. It has jurisdiction of all matters expressly committed to it and of all other matters cognizable by any law court of which the exclusive jurisdiction is not given to some other court. The fact that no other court has exclusive jurisdiction in any matter is sufficient to give the Superior Court jurisdiction of that matter. . . . [T]he general rule of jurisdiction . . . is that nothing shall be intended to be out of the jurisdiction of a Superior Court but that which specially appears to be so; and on the contrary nothing shall be intended to be within the jurisdiction of an inferior court but that which is expressly so alleged. . . . [N]o court is to

be ousted of its jurisdiction by implication." [Citations omitted; internal quotation marks omitted.]).

*Gurliacci* is also consistent with "the judicial policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." (Internal quotation marks omitted.) *Pietraroia* v. *Northeast Utilities*, 254 Conn. 60, 74, 756 A.2d 845 (2000). If the failure to allege an essential fact is treated as subject matter jurisdictional, potentially meritorious claims will be subject to dismissal without affording the plaintiff the opportunity to amend the complaint to correct the defect. See *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 501, 815 A.2d 1188 (2003) ("the primary difference between the granting of a motion to dismiss for lack of subject matter jurisdiction and the granting of a motion to strike is that only in the latter case does the plaintiff have the opportunity to amend its complaint" [internal quotation marks omitted]).

Additionally, as this court observed in *Gurliacci*, if the failure to allege an essential fact under a particular statute deprives the trial court of subject matter jurisdiction, then the failure to prove that fact at trial also must deprive the court of subject matter jurisdiction, requiring the court to dismiss the case.[6] *Gurliacci* v. *Mayer*, supra, 218 Conn. 544–45. This would be a bizarre result. Id.

Accordingly, I believe that, if a claim is within "the class of cases to which the action belongs"; *Amodio* v.

---

[6] Moreover, if the failure to allege or prove an essential fact deprives the trial court of subject matter jurisdiction, then any judgment rendered by the court will be not merely voidable, but void, leading to the instability of judgments. See *Angiolillo* v. *Buckmiller*, 102 Conn. App. 697, 713, 927 A.2d 312 ("[i]f a court has never acquired jurisdiction over a defendant or the subject matter . . . any judgment ultimately entered is void and subject to vacation or collateral attack" [internal quotation marks omitted]), cert. denied, 284 Conn. 927, 934 A.2d 243 (2007).

*Amodio*, supra, 247 Conn. 728; the failure to allege an essential fact under a particular statute goes to the legal sufficiency of the complaint, not to the subject matter jurisdiction of the trial court.[7] I would therefore conclude that, in the present case, because the petitioner raised the *type* of claim contemplated by § 46b-129, his failure to allege that he attended an educational facility as required by the statute did not deprive the trial court of subject matter jurisdiction, but went to the merits of his claim. Consequently, I would reverse the judgment of the trial court on the ground that the petitioner did not establish that he met the requirements of § 46b-129 (j).

---

[7] A motion to strike early in the proceedings will not cause additional delay or expense if the party cannot allege an essential fact in good faith.

